*666 OPINION OF THE COURT
Paul A. Victor, J.
Defendants and third-party plaintiffs Lancaster Studio Associates, Dennis Wright, Benjamin Hadar, and Ruth Shomron (hereinafter, collectively, Lancaster) move for summary judgment dismissing the plaintiffs’ complaint as well as the counterclaims interposed by third-party defendants Paragon Cable Manhattan, Inc. and Time Warner Cable of New York City, Inc. (hereinafter, collectively, third-party defendant or Paragon), or in the alternative for judgment against the third-party defendants for indemnification. The third-party defendants move by separate motion for dismissal of plaintiffs’ complaint. The motions are consolidated for disposition and decided as follows:
Background and Procedural History
On August 12, 1995, plaintiff Anthony Abbatiello, a technician then employed by third-party defendant Paragon, was dispatched by Paragon to a building owned by the defendant Lancaster, located at 936 West End Avenue, in order to investigate a complaint by a residential tenant (who is not otherwise identified) concerning inadequate cable television reception. No prior notice was given to Lancaster or its agents or employees. After unsuccessfully attempting to obtain access to the building or to contact building employees, plaintiff, who had serviced the same building on prior occasions, decided to examine the cable box which was attached to the exterior of the building. In order to gain access to the cable box, he removed from his van a 20-foot extension ladder, which had been supplied to him by Paragon, which he then extended and placed against the side of the building. After connecting an RF meter to the wires inside the junction box, plaintiff determined that the defective signal was caused by “water in the tap” (i.e., water seepage into the junction box).
Plaintiff testified at his examination before trial that “the last thing [he] did prior to the ladder falling was read the meter” and that “[he] was supposed to repair it but [he] fell.” (Emphasis added.) According to plaintiffs attorney, the condition of the junction box required that the old box be removed and a new box installed. In any event, at that moment, prior to the initiation of the repair or replacement, the poles on the bottom of the ladder suddenly bent and the ladder slipped to the side, causing plaintiff and the ladder to topple to the *667 ground. Plaintiff stated that he was “not belted up because there is nothing to hook a safety belt up to * * * [and] [his] employer never told [him] that Che] had to hook up when [he is] on a ladder.” There were no witnesses to the accident. Plaintiff thereafter discontinued all activity and drove directly from the accident scene to his home before seeking medical attention. Lancaster moves for summary judgment dismissing the complaint. Lancaster argues, initially, that since it did not hire the plaintiff or his employer to perform any work at the premises, and since it was not aware of the presence of the plaintiff or even the need for the service call, it should not be held liable for the alleged violation of Labor Law § 240 (1).
Issues Presented
1. Assuming injury sustained by plaintiff during a repair or alteration, may a fee owner of a multiple dwelling be held vicariously liable under Labor Law § 240 when such repair or alteration is made at the direction of the cable television service provider without the fee owner’s prior knowledge and consent?
2. Does Public Service Law § 228 impose a “duty” upon a fee owner sufficient to trigger responsibility under Labor Law §240?
Applicable Statutory Provisions
Labor Law § 240 provides as follows:
“240. Scaffolding and other devices for use of employees
“1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.” (Emphasis supplied.)
Public Service Law § 228 provides:
“1. No landlord shall (a) interfere with the installation of cable television facilities upon his property or premises, except that a landlord may require:

*668
“(1) that the installation of cable television facilities conform to such reasonable conditions as are necessary to protect the safety, functioning and appearance of the premises, and, the convenience and well being of other tenants',

“(2) that the cable television company or the tenant or a combination thereof bear the entire cost of the installation, operation or removal of such facilities; and
“(3) that the cable television company agree to indemnify the landlord for any damage caused by the installation, operation or removal of such facilities.” (Emphasis supplied.)
Discussion
This case presents novel issues, some of which have been addressed only tangentially by appellate courts. No authority has been cited, and none has been located, specifically addressing the applicability of Public Service Law § 228 in this context. In part, the difficulty in resolving the issues presented arises from the fact that the above two applicable statutes serve distinct legislative purposes. Labor Law § 240, being remedial in nature, must be accorded a liberal interpretation so as to extend the widest protection to the worker, in order to “carry out the reforms intended and to promote justice.” (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 321, 302.) On the other hand, Public Service Law § 228, being in derogation of the fee owner’s common-law property rights, invokes the “rule of strict construction.” (Id., § 301.) Moreover, by compelling the owner to provide access to workers who would ostensibly be within the protective ambit of the Labor Law, Public Service Law § 228 indirectly creates a new liability. Public Service Law § 228 thus requires an interpretation which “make[s] no further innovation upon common law rights than the particular case requires.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b]; see also, § 301 [c]; §§ 304, 311.) This Court is thus confronted with a legal conundrum, presented by according one statute a liberal construction in order to provide proper protection for workers while according the other a conservative application in order to preserve an owner’s common-law property rights.
Responsibility of Owners Under the Labor Law v Compelled Access Under the Executive Law
The core objective of section 240 is proper protection. Therefore, a nondelegable duty is imposed upon all responsible *669 entities to protect construction workers, not just with scaffolds, but with such “other devices * * * as to give proper protection to [such workers]” (Labor Law § 240 [1]). When a construction worker is not provided with “proper protection” and is injured as a result of one of the hazards which section 240 was enacted to eradicate, the general common-law defenses are not available, and absolute liability is vicariously imposed on all those deemed by the Legislature to be responsible entities, Le., “contractors and owners and their agents.” (Labor Law § 240 [1].) Therefore, trial courts have been repeatedly cautioned by the New York Court of Appeals to be guided by one overriding and controlling mandate, namely, that section 240 “is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed” (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991], quoting Quigley v Thatcher, 207 NY 66, 68; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]).
The scope and meaning of the term “owner” under the Labor Law has not been defined or otherwise delineated by the Legislature. (Holman v City of New York, 181 Misc 2d 15.) However, attempts to carve out exceptions, or to narrow that term to include only those parties with a property interest who hire the general contractor or supervise the work, have been uniformly rejected. (See for example Coleman v City of New York, 91 NY2d 821; Gordon v Eastern Ry. Supply, 82 NY2d 555; Celestine v City of New York, 59 NY2d 938.) Fee owners have consistently been held liable pursuant to section 240 of the Labor Law, despite the fact that they did not hire the contractors, control the project, or even benefit from the work. In Celestine and its progeny, the Court of Appeals established a “bright-line rule” imposing absolute liability under section 240 on “all owners,” holding that “[1]lability rests upon the fact of ownership and whether [the owner] had contracted for the work or benefitted from it are legally irrelevant.” (Coleman v City of New York, 91 NY2d supra at 822.)
The term “owner” has even been expanded to include those, who although not fee owners, either had some interest in or exercised some control over the property.* The rationale which justifies this broad interpretation and expansion of the term *670 owner is fueled by the “intent” of the Legislature as expressed in chapter 1108 of the Laws of 1969 to place “ultimate responsibility for safety practices * * * where such responsibility actually belongs,” i.e., on the persons and entities who have, or had at some juncture, the ability to require the implementation of safety practices. (Gordon v Eastern Ry. Supply, 82 NY2d supra at 560.) For these reasons, the statutory obligation has been declared to be “nondelegable,” and an owner lessor who bargained away the right to exercise control or supervision over the work is still held accountable to an injured worker. As stated in Kerr v Rochester Gas & Elec. Corp. (113 AD2d 412, 416 [4th Dept 1985]):
“A contrary interpretation of Labor Law §§ 240 and 241, excusing an owner-lessor from liability to an injured construction worker where the owner-lessor reserves no right to hire the contractor or control the work, would leave the injured worker with no recourse should the lessee and contractor lack the means to satisfy a judgment. Moreover, it is within the control of the fee owner, when he conveys a leasehold or other partial interest in the property, to select responsible grantees and to impose conditions in the conveyance concerning construction upon the premises.
“Under the precedent set by the Court of Appeals in Celestine (supra), the conclusion is inescapable. Rochester Gas and Electric Corporation is an ‘owner’ within the meaning of Labor Law §§ 240 and 241, even though it did not employ the contractor and had no right to supervise the work.” (Emphasis supplied.)
However, despite legislative intent and the mandate of Celestine and similar cases, fee owners have on occasion been absolved of section 240 liability. These cases appear to be *671 grounded on “notions of reasonableness and fairness,” in circumstances under which strict application of the statute would be unjust and inequitable. (See, e.g., Holman v City of New York, 181 Misc 2d 15, 30; Khela v Neiger, 85 NY2d 333, 337 [1995]; Cannon v Putnam, 76 NY2d 644, 650 [1990] [citing the “Legislature’s concern for fairness and practicality” in construing the homeowner’s exemption to the Labor Law].)
In Holman (supra), a case involving injury to a worker during the demolition of a building by a municipality, the court stated:
“This court is not unmindful of the numerous precedents which call for a ‘bright-line’ strict application of this absolute liability statute as to fee owners, but this court cannot blind itself to the fact that McDowell [the fee owner] was deprived of the rights and privileges of such ownership. Not only was she denied any voice, or even a reasonable opportunity to seek a modification or judicial intervention, she was even summarily evicted from her own premises and advised that she had ‘no rights.’ It could not have been within the contemplation of the Legislature to impose a nondelegable duty upon a fee owner, who not only did not delegate any such demolition rights, but even objected to and attempted to prevent the demolition.” (181 Misc 2d supra at 30.)
The above cases appear to teach that the “bright-line” standard is particularly applicable when an owner delegates authority to another — in which event said owner is still held vicariously liable under section 240 because the “duty” imposed thereunder is “nondelegable.” However, when an owner has not delegated any authority to another (for example to a trespasser), said owner is only responsible for his own acts of omission or commission which result in a violation of section 240. (See Otero v Cablevision, 186 Misc 2d 651.) Even under the most liberal interpretation of that provision, an owner should not be held responsible for injury incurred by the worker during a construction project which the owner did not, actually or by operation of law, authorize. (Holman v City of New York, supra.) Thus, in this proceeding, involving the installation and repair of cable television equipment, the vital and primary issue must be whether the premises owner actually, or by operation of Public Service Law § 228, authorized the work which resulted in injury to the cable television worker.
*672 Installation and Repair of Cable Television Equipment
The various Departments of the Appellate Division appear to be in conflict as to an owner’s responsibility for an injury to a cable television worker who was not hired by said owner. In any event, it is noted that in none of these cable television cases is the issue of imposed authorization via operation of Public Service Law § 228 even discussed or considered! For example, in those appellate proceedings which have upheld actions against fee owners by workers injured during the installation or repair of cable television equipment, only Labor Law § 240 (not Public Service Law § 228) is cited as the authority for the imposition of a nondelegable duty and vicarious responsibility. (See, e.g., Rodriguez v New York City Hous. Auth., 194 AD2d 460 [1st Dept 1993]; Fuller v Niagara Mohawk Power Corp., 213 AD2d 986 [4th Dept 1995]; Dedario v New York Tel. Co., 162 AD2d 1001 [4th Dept 1990]; Tauriello v New York Tel. Co., 199 AD2d 377 [2d Dept 1993].) No mention is made of the owner’s authorization for the work, or to the events leading up to the worker’s injury from which an inference can be made that the owner knew of and expressly or impliedly consented to the work. Those decisions are totally silent as to Public Service Law § 228 or any policy (apart from Labor Law § 240) which would justify the imposition of absolute and vicarious liability upon such fee owners.
In those appellate proceedings where cable television workers have been denied the right to proceed against owners, not only are the decisions silent as to the implications of Public Service Law § 228, they also do not attempt to distinguish (and even seem to ignore) the bright-line standard set by the Court of Appeals in Celestine and its progeny which appears to hold that all fee owners should remain responsible even though the injured worker was hired by others. (See Aviles v Crystal Mgt., 233 AD2d 129 [1st Dept 1996]; Marchese v Grossarth, 232 AD2d 924 [3d Dept 1996]; Ceballos v Kaufman, 249 AD2d 40 [1st Dept 1998].) For example, in Ceballos (supra), where summary judgment was granted to the fee owners, the court (without mentioning Celestine, Gordon and Coleman, supra) supported its conclusion with the following comment:
“To recover from defendants in their capacity as owners pursuant to Labor Law §§ 240 or 241, it would, under the circumstances of this case, have been necessary for plaintiff to establish that he had been employed by defendants or their agent (see, Brown v Christopher St. Owners Corp., 211 AD2d *673 441, 442, affd 87 NY2d 938). It is clear, however, that none of defendants hired, or even knew of the retention of, the cable television contractor in whose employment plaintiff was at the time of the accident giving rise to the within action and, accordingly, summary judgment dismissing the Labor Law causes of action was properly granted (see, Brown * * * supra; Aviles v Crystal Mgt., 233 AD2d 129; Marchese v Grossarth, 232 AD2d 924, lv denied 89 NY2d 809)” (emphasis supplied).
A similar conclusion was reached in Marchese v Grossarth (232 AD2d 924 [3d Dept 1996]). The tenant in that case had arranged for the installation of cable television. During the course of his work, as in the instant case, plaintiff fell from a ladder that he had placed against an exterior wall of the building, sustaining personal injuries. The court, in granting summary judgment dismissing the Labor Law § 240 claim, held:
“It is established law that ‘[t]o come within the special class for whose benefit absolute liability is imposed upon contractors, owners and their agents to furnish safe equipment for employees under section 240 of the Labor Law, a plaintiff must demonstrate that he was both permitted or suffered to work on a building or structure and that he was hired by someone, be it owner, contractor or their agent’ [cases cited]. Defendant * * * stated that, because he retained no managing agent, he was the only person with authority to grant permission for the installation of cable television in the apartment building and that no such permission was ever requested or granted * * * In fact, he indicated that he was unaware that anyone had been at the building to install cable television until he was served with the summons and complaint in this action. Plaintiff came forward with no competent evidence to controvert defendant’s showing, mandating the conclusion that plaintiff was hired by Romero, a mere tenant, without the knowledge or consent of defendant or his agent [cases cited]. As such, plaintiff is not afforded the protection of Labor Law § 240 (1) (see, ibid.)” (Marchese v Grossarth at 925.)
One King’s County trial court, however, reasons that the rule enunciated in the Celestine line of cases does not apply in the circumstances presented in Ceballos and Marchese (supra) *674 because the owners in each of those cable television cases had not surrendered control of the exterior of the building to anyone, and therefore the tenants had no authority on the owner’s behalf to authorize the exterior work which resulted in injury to the worker. (Otero v Cablevision, supra.) In Otero (at 657), however, a motion for summary judgment by the owner was denied because some evidence had been presented from which “a jury [may] draw an inference that [the contractor] obtained permission to do the installation involving plaintiff from [owner] at the time * * * [the] building was initially wired.” Although this initial “permission” may have been a veiled reference to the authorization and consent initially provided by Public Service Law § 228, no mention is expressly made in Otero to that provision of law.
In any event, since none of the cases previously cited consider or discuss the implications of Public Service Law § 228, the question of whether section 240 liability may be triggered, by operation of that statute, appears to be sui generis.
Statutory Licensee or Trespasser?
At common law any person who enters and wrongfully uses the property of another without the express or implied consent of the owner, or other legal authority, would be a trespasser. (Augeri v Roman Catholic Diocese, 225 AD2d 1105 [1996].) Obviously a worker who is injured while engaged in a trespass should not be permitted to seek damages under section 240 of the Labor Law from the victimized owner. (Holman v City of New York, supra.) But for the enactment of Public Service Law § 228, a cable television company and its employees would be committing a trespass (or more) when entering a landlord’s property without permission for the purpose of installing cable television equipment. The Public Service Law, however, which has been held to be a “valid exercise of police power,” grants such companies a “statutory license” to enter upon and alter a fee owner’s property, and thus this enactment converts what would have been a trespass, into an authorized and lawful entry. (Loretto v Teleprompter Manhattan CATV Corp., 58 NY2d 143 [1983], rearg denied 59 NY2d 761 [1983].) However, does this “authorized” entry automatically trigger the nondelegable obligations of section 240? In other words, does the statutory license granted by section 228, in and of itself, impose a duty and the participation required of a landlord sufficient to trigger landlord’s vicarious responsibility under Labor Law §240?
*675 Compelled Authorization. Under the Public Service Law
Public Service Law § 228 provides that the landlord may
“[not] interfere with the installation of cable television facilities upon his property or premises, except that a landlord may require * * *
“reasonable conditions as are necessary to protect the safety, functioning and appearance of the premises, and the convenience and well being of other tenants(Public Service Law §228 [1] [a] [1] [emphasis added].)
It provides further that the landlord may require “that the cable television company agree to indemnify the landlord for any damage caused by the installation, operation or removal of such facilities.” (Public Service Law § 228 [1] [a] [3] [emphasis added].)
Although Labor Law § 240 is to be accorded a liberal construction, the rule of construction which applies to the Public Service Law must be one which limits, not expands upon, the incursion on the landlord’s common-law right to control the property. That rule is summarized and explained as follows:
“The common law is never abrogated by implication. Statutes in contravention thereof cannot be extended by construction or by doubtful implication, to include cases or matters not fairly within the terms of the act, or within the reason as well as the words thereof. Thus, rules of the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires. Where a change in the common law is to be effectuated the legislative intent to do so must be clearly and plainly expressed. When, therefore, a statute is intended to abrogate a common law right or to confer a right not vested by the common law, it will be so construed as not to go beyond the letter; and not even to that extent unless it appears to be according to the spirit and intention of the act. If a statute admits of two interpretations, that which more nearly conforms to the rules of the common law is to be adopted, and not only is an enactment to be construed with reference to the common law, but it is presumed that the Legislature intended to make no further innovation upon common law rights than the particular case requires. A statute must be read in connection with the common law existing at the time; and if the common law rule and the statute can stand to *676 gether, the statute will be construed so as to effectuate both, and should not be so construed as to abolish the common-law rule.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b] [emphasis supplied].)
The Public Service Law clearly provides a statutory license. However, since the license appears to be conditional, it would appear irrational (as well as violative of the rules of construction) to impose the vicarious obligations of section 240 of the Labor Law without some proof that the conditions have been satisfied. Section 228 at the very least implies that an owner must be provided with some form of prior notice that an installation or a repair is contemplated, so that said owner will be able to be in a position to condition his consent on each occasion upon an agreement by the contractor to implement reasonable safety practices and provide contractual indemnification.
This Court concludes, therefore, that the Public Service Law should not be read expansively, as plaintiff urges, so as to unconditionally deem the owner to have consented to the performance of work of which the owner had no prior knowledge. Such a reading of the Public Service Law would expand the reach both of the Labor Law and the Public Service Law far beyond the original scope and purpose of each statute. The Public Service Law was enacted to secure the right of the tenant to have access to cable television services, not to impose unconditional liability upon a defenseless fee owner. The interpretation suggested by the plaintiff goes far beyond the scope of the language employed in each statute, so as to create a new liability with respect to cable service workers which was not envisioned by the Legislature.
In this proceeding no evidence has yet been proffered from which it may be inferred that Lancaster ever actually, or by custom and practice, received knowledge of, or consented to, the installation of cable television equipment, or to any repair thereof. But for Public Service Law § 228, the third-party defendant Paragon would be a trespasser upon Lancaster’s property, and Lancaster would have no vicarious responsibility for Paragon’s actions and would owe no duty to plaintiff. It would appear unconscionable (and not consistent with legislative intent) under these circumstances to impose absolute, section 240 liability upon such an owner.
The Court, however, is not unmindful that the relevant information, if any, concerning Lancaster’s prior authorization, *677 and the custom and practice of Lancaster and Paragon with regard to the installation and repair of such equipment, would be in the possession only of the entities (i.e., Lancaster and Paragon) who would least benefit by revealing it in these proceedings. Lancaster and Paragon have denied such prior authorization, or a custom and practice which would trigger the obligations of section 240, and plaintiff has failed to come forward with any evidence which would rebut this evidence or create an issue of fact which would warrant denial of the motion to dismiss. Absent some evidence of this kind, this Court is constrained to dismiss the cause of action based on Labor Law § 240, unless plaintiff can demonstrate that some evidence exists from which the authorization to Paragon and the vicarious liability of Lancaster can be inferred. (See Otero v Cablevision, supra.)
Conclusion
The respective motions by the defendant and third-party defendants are granted.

 See for example DeFreece v Penny Bag, 137 AD2d 744 (2d Dept 1988) (contract vendee held to be an owner because he was provided with access and contracted to have repairs made); Vigliotti v Executive Land Corp., 186 AD2d 646 (2d Dept 1992) (a transfer of title to an industrial development agency was not sufficient to divest the former owner of responsibility, and *670 both former owner and a contract vendee were each deemed owners within the meaning of the statute); Sperber v Penn Cent. Corp., 150 AD2d 356 (2d Dept 1989) (both Penn Central Corp. [the former owner] and its wholly owned subsidiary corporation [the present owner], neither of which had any access to the property, were each deemed as owners under the statute because Penn Central Corp. had, some years before, leased the property to the Metropolitan Transportation Authority for 60 years); Collins v County of Monroe Indus. Dev. Agency, 167 AD2d 914 (4th Dept 1990) (the prior fee owner, which had no responsibility for repairs and which had conveyed title to a development agency and had granted a permanent easement to the City to build a garage, was still deemed an “owner” because it had obtained a lease to operate the garage).