■ Anthony Abbatiello, Jr., et al., Appellants, v Lancaster Studio Associates et al., Defendants and Third-Party Plaintiffs-Respondents. Paragon Cable Manhattan, Inc., et

al., Third-Party Defendants-Respondents. [763 NYS2d 44] —Order, Supreme Court, Bronx County (Paul Victor, J.), entered July 6, 2001, which, in an action by a cable television technician for personal injuries sustained when he fell from a ladder while inspecting or repairing a cable box attached to the exterior of a building owned by defendants, insofar as appealed from, granted motions by defendants and by third-party defendant cable television companies, plaintiff's employers, for summary judgment dismissing plaintiff's cause of action under Labor Law § 240 (1), affirmed, without costs.

It is a matter of precedent in this Department that a cable television technician called to premises by a building tenant has no cause of action under Labor Law § 240 (1) against the building's owner where the tenant was not acting as the owner's agent and the owner did not otherwise authorize the work (*Ceballos v Kaufman*, 249 AD2d 40 [1998]; *accord Marchese v Grossarth*, 232 AD2d 924 [3d Dept 1996], *lv denied* 89 NY2d 809 [1997]; *contra Otero v Cablevision of N.Y.*, 297 AD2d 632 [2d Dept 2002]). We are not persuaded that defendant owners otherwise authorized the work requested by their unnamed tenant, and third-party defendants' unnamed subscriber, by virtue of Public Service Law § 228, which prohibits landlords from interfering with the installation of cable television facilities. The equipment that plaintiff was working on at the time of the accident was not being "installed" and was not owned by defendants but by third-party defendants (*cf. Ray v Niagara Mohawk Power Corp.*, 256 AD2d 1070 [1998]). In addition, as the motion court stated, section 228 was enacted to assure that tenants have access to cable television (*see* Public Service Law § 211), not to impose liability on landlords for personal injuries where such liability would not otherwise exist.

Moreover, dismissal is also warranted as the work being performed by plaintiff at the time of the accident consisted of the routine maintenance of a malfunctioning cable box and did not constitute "erection, demolition, repairing, altering, painting, cleaning or pointing of a building" so as to fall within the protective ambit of Labor Law § 240 (1) (*see Rammelkamp v S.L. Bldg. Co.*, 270 AD2d 4 [2000] [routine repair of a telephone line does not fall within the statute's coverage]; *Breeden v Sunset Indus. Park Assoc.*, 275 AD2d 726 [2000] [investigating a nonworking telephone line consisted of routine maintenance outside of the statute's parameters]; *Zevallos v Treeco Plainview Ltd. Partnership*, 267 AD2d 305 [1999], *lv denied* 95 NY2d 756 [2000] [examination of a junction box to determine source

of electrical sparking in preparation for changing some wires was not within the ambit of Labor Law § 240 (1)]; *Jehle v Adams Hotel Assoc.*, 264 AD2d 354 [1999] [Labor Law § 240 (1) does not cover routine maintenance, such as the replacement of worn-out parts, not done within the context of construction or renovation work]). Concur—Buckley, P.J., Nardelli, Williams and Gonzalez, JJ.

Mazzarelli, J., dissents in a memorandum as follows: On August 12, 1995, plaintiff, a cable television technician employed by Paragon Cable (now Time Warner Cable, collectively referred to herein as Cable), was in the field when he received a call from his dispatcher. He was directed to go to 936 West End Avenue (the building) to repair a "low signal" problem in one of its apartments. The building is owned by defendant Lancaster Studio Associates (Lancaster). Between four and nine cable boxes are bolted to the outside of the brick building, about 15 to 20 feet above ground level. The cable boxes provide cable service for the whole building.

Prior to dispatching plaintiff, a Cable serviceman had unsuccessfully attempted to correct the signal problem. Notably, a cable television technician, such as plaintiff, is only called to a job when a serviceman cannot make the required repair.

Plaintiff arrived at the building and rang the complaining customer's doorbell, but there was no answer. Because plaintiff had done work at the same building on prior occasions, he was able to identify the outside box which routed the cable signal to the customer's apartment.

To access the cable box, plaintiff removed a Cable extension ladder from the truck, and leaned it against the building wall. The ladder was propped at an angle to the building, with the top set against the building, inches below the cable box. Plaintiff carried a bag of tools and an RF meter so that he could take the cable box apart, diagnose and fix the problem. He carried the RF meter on one shoulder and his toolbox on the other as he ascended the ladder. When he was eye level with the cable box, he opened it and found water inside. As he plugged in the RF meter to measure the cable signal, the poles on the bottom of the ladder started to bend, the ladder moved to the right, and he fell. There were no witnesses to the accident.

Plaintiff alleges that as a result of his fall, he has suffered injuries to both of his knees. He has undergone five knee surgeries, and alleges that he is left with permanent residual disabilities.

Plaintiff commenced this action against Lancaster, and its

individual partners, asserting violations of Labor Law §§ 200, 240 and 241, as well as claims for common-law negligence, breach of a duty to provide a safe place to work, and strict liability. Lancaster brought a third-party action against Cable.

Lancaster moved for summary judgment dismissing plaintiff's complaint, as well as the counterclaims interposed by Cable, or, in the alternative, for a judgment against Cable for indemnification. As relevant to the appeal, Lancaster asserted that plaintiff could not state a Labor Law § 240 (1) claim because it had not hired or permitted plaintiff to work on the premises, and because the work that he was doing when the accident happened was "routine maintenance," an activity not covered by section 240. By separate motion, Cable moved for dismissal of the third-party complaint. In opposition, plaintiff contended that pursuant to Public Service Law § 228, Lancaster is deemed to have consented to the performance of the work; that it entailed the repair and/or replacement of the cable box which served multiple apartments on the premises and that the work thus constituted an "alteration" with the meaning of Labor Law § 240 (1), which imposes absolute and vicarious liability on Lancaster.

The IAS court dismissed the complaint, the third-party complaint and counterclaims, concluding that dismissal of plaintiff's Labor Law § 240 claim was mandated given the lack of evidence that Lancaster actually, or by custom and practice, received knowledge, or consented to installation of, cable television equipment, or any repair thereof. Plaintiff has not contested the dismissal of his Labor Law § 241 (6) and § 200 claims or his common-law negligence claim.

New York's Labor Law, including section 240, "the Scaffold Law," was enacted in 1921, as part of a comprehensive package of reform legislation, to regulate child labor, sweatshops and factory work (L 1921, ch 50). The purpose of these laws was to protect workers by trying to eliminate dangers to their health and safety, especially for those working in hazardous occupations.

There have since been various amendments to the Labor Law. The Court of Appeals discussed some of the changes in 1978: "Prior to 1969, [Labor Law § 240 (1)] placed liability for its violation upon 'A person *employing* or *directing* another to perform labor' (emphasis ours); it now unqualifiedly places liability upon '[a]ll contractors and owners and their agents', duplicating the language of section 241. Under both amended sections, an owner no longer need be the employer of the worker or one directing his labor in order to be subject to

liability. \* \* \* If, with all that, an owner's liability had been intended to continue to be conditioned on control and supervision, it would have to be said that the Legislature, for all its vaunted labors and professions, had engaged in but an empty charade" (*Haimes v New York Tel. Co.*, 46 NY2d 132, 136 [1978]; *see also Rocha v State of New York*, 45 AD2d 633, 635-637 [1974], *lv denied* 36 NY2d 642 [1975]).

There have been further amendments to the statute, and section 240 (1), in its present form, provides that, "[a]ll contractors and owners and their agents \* \* \* in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." Throughout these changes, the purpose of the statute, the protection of workers in hazardous occupations, has remained the same. The Court of Appeals has consistently recognized this, and consistently reiterated, "[T]he purpose of the statute is to protect workers by placing ultimate responsibility for safety practices on owners and contractors, instead of on workers themselves [citations omitted]. Consistent with this objective, the section imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty that proximately causes a plaintiff's injury. As a result, this strict liability provision 'is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed' [citation omitted]" (*Panek v County of Albany*, 99 NY2d 452, 457 [2003]).

Over time, section 240 (1) of the Labor Law has been variously interpreted to meet an ever-changing landscape and a myriad of fact patterns. As a result of a Court of Appeals case, *Whelen v Warwick Val. Civic & Social Club* (47 NY2d 970 [1979]), a number of cases from this Department included language which would limit the group of persons protected by the statute. These cases required a plaintiff seeking the protection of Labor Law § 240 (1) to show, "that he was both permitted or suffered to work on a building or structure and that he was hired by someone, be it owner, contractor or their agent" (*id.* at 971; *see Bosch v 229 W. 97 Realty Assoc.*, 279 AD2d 373 [2001]; *Webb v 444 Cent. Park Owners*, 248 AD2d 175 [1998]; *Brown v Christopher St. Owners Corp.*, 211 AD2d 441 [1995], *affd on other grounds* 87 NY2d 938 [1996]). However, each of these cases had a unique fact pattern and thus their holdings

did not affect the purpose of the Labor Law, which is to protect a class of workers engaged in hazardous activities. In any event, several recent Court of Appeals cases have not followed this limiting trend (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 560 [1993]; *Coleman v City of New York*, 91 NY2d 821 [1997]; *see also Celestine v City of New York*, 86 AD2d 592 [1982], *affd* 59 NY2d 938 [1983]).

In *Gordon*, plaintiff was employed by a railroad car services company, and he was cleaning the exterior of a railroad car with a sandblaster when he was injured. He sued the owner of sandhouse where the accident happened, alleging violation of Labor Law § 240 (1). The defendant claimed that it could not be liable as an "owner," because it had leased the space to another company, it had not contracted to have the work done, and the work was not being done for its benefit. Under the rule articulated in *Bosch* (*supra*), *Webb* (*supra*), and *Brown* (*supra*), this plaintiff would not have a cause of action under section 240 (1). However, the Court of Appeals granted the *Gordon* plaintiff summary judgment pursuant to section 240 (1), finding that "[l]iability rests upon the fact of ownership and whether [the defendant] had contracted for the work or benefitted from it are legally irrelevant" (*Gordon, supra* at 560).

Similarly, the plaintiff in *Coleman* was a structure maintainer employed by the New York City Transit Authority, who fell through the canopy attached to an elevated train station owned by the City of New York. The City urged that although it technically owned the property, it could not be held liable pursuant to Labor Law § 240 (1) because it did not have the power to protect Transit Authority workers. The Court of Appeals rejected the City's argument, citing *Gordon*, concluding that the City was responsible pursuant to the plain language of the statute, which does not exempt City-owned property (*Coleman, supra* at 822-823).

In accord with these holdings, the Fourth Department found that a property owner which had granted a city a permanent easement to construct a parking garage was nonetheless liable, under Labor Law § 240 (1), for injuries sustained by a construction worker who fell when a portion of the floor collapsed (*Collins v County of Monroe Indus. Dev. Agency*, 167 AD2d 914 [1990], *lv dismissed* 77 NY2d 874 [1991]). In that case, the Court also concluded that a sale and leaseback arrangement between the property owner and the county industrial development agency (IDA) constituted a mere financing mechanism, which did not amount to an allocation of ownership to IDA, because the property owner retained the ability to control the circumstances of construction upon the premises (*id.* at 915).

In this case, the plaintiff is a cable television technician who was on defendant's premises at the request of a tenant and under color of Public Service Law § 228. In virtually identical circumstances, three Appellate Divisions have reached divergent holdings (*compare Ceballos v Kaufman*, 249 AD2d 40 [1st Dept 1998] [owner not liable] *and Marchese v Grossarth*, 232 AD2d 924 [3d Dept 1996], *lv denied* 89 NY2d 809 [1997] [owner not liable], *with Otero v Cablevision of N.Y.*, 297 AD2d 632 [2d Dept 2002] [owner liable]).

I believe that the analysis set forth in *Otero* is consonant with the controlling Court of Appeals precedent and the purposes of the Labor Law. In that case, the Second Department wrote "Labor Law § 240 (1) is to be liberally construed to effectuate the Legislature's purpose of protecting laborers [citations omitted] 'who ply their livelihoods on ladders and scaffolds [and who] usually have no choice but to work with the equipment at hand, though danger looms large' [citation omitted]. In recognition of the Legislature's purpose in seeking to afford special protections to such vulnerable laborers, the Court of Appeals has consistently characterized the protections of Labor Law § 240 (1) as 'extraordinary' [citations omitted]" (*id.* at 633) The Court recognized the trend that was developing in the *Bosch*, *Webb*, and *Brown* cases, declined to follow it, and concluded instead that "[t]he law as determined by the Court of Appeals favors the imposition of liability as against the [b]uilding" (*Otero, supra* at 634).

While not discussed in *Otero*, *Ceballos* or *Marchese*, the implications of Public Service Law § 228, and how it may affect defendant's liability under Labor Law § 240 (1), must be considered.

Public Service Law § 228 (1) provides, as relevant, that

"No landlord shall (a) interfere with the installation of cable television facilities upon his property or premises, except that a landlord may require:

"(1) that the installation of cable television facilities conform to such reasonable conditions as are necessary to protect the safety, functioning and appearance of the premises, and the convenience and well being of other tenants * * * [and]

"(3) that the cable television company agree to indemnify the landlord for any damage caused by the installation, operation or removal of such facilities."

This section is part of New York's mandatory cable access law (Public Service Law § 211 *et seq.*). It requires a landlord, here the owner, to allow the installation and repair of cable televi-

sion facilities on its premises (*see Loretto v Teleprompter Manhattan CATV Corp.*, 458 US 419 [1982] [upholding the constitutionality of predecessor to Public Service Law § 228]).

A goal of the mandatory cable access statute is to protect cable companies from "undue restraint and regulation so as to assure cable systems with optimum technology and maximum penetration in this state as rapidly as economically and technically feasible * * * the soundness of which is essential to the state's economic growth and general welfare" (Public Service Law § 211). The primary intent of the statute is to assure that tenants have access to cable television. While Public Service Law § 228 cannot impose liability on landlords for personal injuries where such liability would not otherwise exist, requiring Lancaster to provide cable employees with a safe place to work is not an expansion of liability under Labor Law § 240 (1) (*see Coleman, supra*; *Gordon, supra*; *Celestine, supra*). Certainly, the implementation of Public Service Law § 228 is not to be accomplished at the expense of the safety of laborers exposed to elevation-related risks while installing and repairing cable television facilities.

This case is no different than *Otero*, *Coleman* and *Gordon*, in that Lancaster, like the owners in those cases, was not controlling or supervising the work being done on its property. These defendant owners are nonetheless responsible for the safety of those workers. In fact, because of Public Service Law § 228, Lancaster knew that cable television technicians like plaintiff would be working on its premises, for the benefit of the tenants in its building. In this situation, Lancaster should be held responsible, pursuant to the requirements of Labor Law § 240 (1), for the safety of the workers exposed to the hazards of working at an elevation on its property. As noted by the Fourth Department in an analogous situation: "A contrary interpretation of Labor Law §§ 240 and 241, excusing an owner-lessor from liability to an injured construction worker where the owner-lessor reserves no right to hire the contractor or control the work, would leave the injured worker with no recourse should the lessee and contractor lack the means to satisfy a judgment. Moreover, it is within the control of the fee owner, when he conveys a leasehold or other partial interest in the property, to select responsible grantees and to impose conditions in the conveyance concerning [cable television repair work at] the premises" (*Kerr v Rochester Gas & Elec. Corp.*, 113 AD2d 412, 416 [1985]; *see also Sperber v Penn Cent. Corp.*, 150 AD2d 356, 357-358 [1989]).

Further, it cannot be determined, as a matter of law, at this

stage of the proceeding, whether the work the plaintiff was doing was repair or routine maintenance. Labor Law § 240 (1) does not apply to routine maintenance, in a nonconstruction, nonrenovation context (*see Smith v Shell Oil Co.*, 85 NY2d 1000 [1995]). It does, however, protect workers who are injured while engaged in repair work at a building or structure (*Caraciolo v 800 Second Ave. Condominium*, 294 AD2d 200 [2002]; *Short v Durez Division-Hooker Chems. & Plastic Corp.*, 280 AD2d 972 [2001]; *Craft v Clark Trading Corp.*, 257 AD2d 886 [1999]; *Fuller v Niagara Mohawk Power Corp.*, 213 AD2d 986 [1995], *lv denied* 86 NY2d 708 [1995] [cable television worker investigating a customer's complaint of "snowy reception" involved in repair pursuant to section 240 (1)]; *cf. Rammelkamp v S.L. Bldg. Co.*, 270 AD2d 4 [2000]; *Zevallos v Treeco Plainview Ltd. Partnership*, 267 AD2d 305 [1999], *lv denied* 95 NY2d 756 [2000]; *Breeden v Sunset Indus. Park Assoc.*, 275 AD2d 726 [2000]).

Here, plaintiff was called to the location because the low signal problem could not be fixed by the Cable serviceman. Plaintiff, a technician, was dispatched to the building to diagnose the problem, and to fix it. Plaintiff was not aware of the scope of the problem when he arrived at the building, and this issue cannot be determined, as a matter of law, at this stage of the proceedings.

In conclusion, I disagree with the majority because it is, in effect, crafting a new exception to the Labor Law. There have been two legislative amendments to the Labor Law excepting classes of owners; one exempting the owners of one- and two-family dwellings who do not control or supervise work on the house from liability (Labor Law § 240 [1], as amended by L 1980, ch 670, § 1; *see Cannon v Putnam*, 76 NY2d 644 [1990]); the other excepting architects and engineers who do not actively supervise the construction or demolition of a building (Labor Law § 240 [1], as amended by L 1981, ch 241, § 1; *see Thompson v St. Charles Condominiums*, 303 AD2d 152 [2003]). The courts have also created the recalcitrant worker and sole proximate cause exceptions to liability (*Smith v Hooker Chems. & Plastics Corp.*, 89 AD2d 361 [1982], *appeal dismissed* 58 NY2d 824 [1983] [recalcitrant worker exception]; *Jastrzebski v North Shore School Dist.*, 223 AD2d 677 [1996], *affd* 88 NY2d 946 [1996] [same]; *Weininger v Hagedorn & Co.*, 91 NY2d 958 [1998] [sole proximate cause exception]; *George v State of New York*, 251 AD2d 541 [1998], *lv denied* 92 NY2d 815 [1998] [same]; *Anderson v Schul/Mar Constr. Corp.*, 212 AD2d 493 [1995] [same]). The majority here would create yet another.

There is no exemption for the installation or repair of cable television. If such an exemption were deemed warranted, it is within the province of the Legislature, not the courts, to amend the statute.

Accordingly, I would reverse the order appealed from and reinstate plaintiff's complaint. [*See* 188 Misc 2d 665.]