■ WILLIAM DALEY et al., Respondents, v CITY OF NEW YORK METROPOLITAN TRANSPORTATION AUTHORITY et al., Appellants, et al., Defendant. (And a Third-Party Action.) [716 NYS2d 50] —Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered on or about June 23, 1999, which denied defendants' motions for summary judgment dismissing the complaint, modified, on the law, the motion granted to the extent of dismissing plaintiff's Labor Law § 240 (1) claim, and otherwise affirmed, without costs.

In July 1995, plaintiff was employed as a construction worker by third-party defendant Slattery Associates, which had contracted with the City for demolition work on the overpass/tunnel Fordham Plaza Bridge located over the Metro-North Railroad tracks in the Bronx. During the demolition job, slabs of concrete were cut by a jackhammer, and then lowered by a crane to a ground-level platform. The concrete slabs were chained on four sides and the chains were held tight by a "shackle." Plaintiff, working on ground-level, helped guide the concrete slabs so as to prevent them from spinning on the way down.

In his deposition, plaintiff testified he was standing on the ground and guiding the chain "[j]ust waiting for the chain * * * to get the slab in the particular spot." He guided the slab on top of a six-inch platform which was resting on the ground, in such a manner as to allow space for the removal of the chains through the openings underneath the top plank. However, the fact that the slab was off the ground did not mean that it was not stationary on the plank. Plaintiff, in his deposition testimony, was clear that the slab came to rest on the plank,

although elsewhere he indicated that tension in the chain meant that "[i]t wasn't settled yet." By this he meant that the chains were not yet slack. When the slab came to rest on the plank, plaintiff was directed by his foreman to retrieve the shackles.

Plaintiff described the mechanics of doing so. The crane lifting the slab has a cable. At the end of the cable is a hook, which hooks into the chain rigging holding the slab. In order to better secure the rigging, a shackle "handle" is used to tighten, or, when need be, to loosen, the chain rigging around the slab. The handle, when the appropriate tightness is achieved, has a grip that "bites" into the chain. Plaintiff explained that the handle ordinarily is "banged off" with a pipe when it is time to release the tension. When the slab is positioned, the tension in the cable must be reduced, so that the hook can be removed, to then reduce the tension in the chain so that the handle can be released, reducing the tension in the rigging yet further. Plaintiff had intended to release the hook that held the chain. To reach the hook, though, he pulled the chain, which was still stiff with tension, down a bit more. At this point, he was looking up at the boom while standing on the ground next to the slab, which itself was already stationary on the plank, and he was holding the chain with both hands, pulling on it to get more slack. He heard a "smack," caused when the shackle handle released. The shackle flew through the air and hit him in the leg, which apparently caused significant injury.

Labor Law § 240 (1) imposes strict liability on owners and employers for injuries to workers arising from, *inter alia*, defects in safety devices that are required to protect workers from risks inherent in elevated work sites. The point, reflecting the peculiar hazards of elevated construction work, is to protect workers from falling, or from having things at work sites falling on them, by requiring that safety devices secure the worker or objects. To that end, the terms of the statute are to be liberally construed. However, in contrast to such a broad imposition of liability, the Legislature, and the Court of Appeals, have made clear that strict liability under section 240 (1) is limited only to risks associated with elevation differentials. Not every gravity-related hazard falls within the statute (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490-491). Hence, the mere fact that gravity causes something to fall while being moved, does not implicate section 240 (1) if the object, though falling, had not been substantially elevated above the site (*Melo v Consolidated Edison Co.*, 92 NY2d 909). The site itself must be elevated above, or positioned below, the area where the object

is being secured or hoisted (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514). Hence, even when a steel beam was lowered without hoists from a position several inches above the worker's head, from where it fell on his foot (*Rodriguez v Margaret Tietz Ctr. for Nursing Care*, 84 NY2d 841), or when an unbraced wall at ground-level collapsed onto the worker (*Misseritti v Mark IV Constr. Co.*, *supra*), or a 12 foot high concrete form, sitting at ground-level, fell onto the worker (*Corsaro v Mt. Calvary Cemetery*, 214 AD2d 950), there were no elevation differentials, the necessary predicate for section 240 (1) liability. Similarly, an object that fell from a three foot height onto the worker's foot (*Malecki v Wal-Mart Stores*, 222 AD2d 1010) or from a crane as the object was lifted from a pile of debris at the same level as the site (*Ruiz v 8600 Roll Rd.*, 190 AD2d 1030), did not result in section 240 (1) liability. As we have noted, "the insignificance of the elevation differentials meant that the object had been positioned at the same level as the work site so that there was no fall from an elevated work site" (*Melo v Consolidated Edison Co.*, 246 AD2d 459, 461, *affd* 92 NY2d 909, *supra*). Even if a defective safety device proximately causes the injury, section 240 (1) liability necessarily derives from the elevation differential, and not solely from the defect in the safety device (*Rocovich v Consolidated Edison Co.*, *supra*; *Melo v Consolidated Edison Co.*, *supra*).

Even according plaintiff's testimony the most favorable construction, the facts of the present case simply do not make out a claim under Labor Law § 240 (1). The Court of Appeals, in affirming our own ruling in *Melo v Consolidated Edison Co.* (92 NY2d 909, *affg* 246 AD2d 459, *supra*), addressed substantially similar circumstances, and made the point that even if the injury is caused by a defective hoist, no section 240 (1) liability arises when there is no elevation differential between the worker and the agency of the injury—here the rigging around the concrete slab that is basically at ground-level.

The distinction which the dissent attempts, that lowering the chain further to release the tension somehow was a gravity-related incident that caused the handle to release, is then beside the point. That description also does not comport with the facts. In short, nothing fell. By contrast, in *Melo*, something fell, and still there was no section 240 (1) liability. In *Melo*, a steel plate had been secured by a hook and chain to the shovel part of a backhoe, which then started to hoist the plate. As it was hoisted, and reached a vertical position at street level, it disengaged and fell on plaintiff's shoulder and foot. The plate might even have been a few inches off the ground at that time.

In the present case, as noted, not only were the worker and the rigging at the same level but, as noted, nothing *fell*—as the dissent even characterizes it, the handle was "propelled."

Accordingly, we dismiss the Labor Law § 240 (1) claim, and otherwise affirm. Concur—Tom, J. P., Andrias and Buckley, JJ.

Ellerin and Rubin, JJ., dissent in a memorandum by Ellerin, J., as follows: Contrary to the majority, I find that the facts of this case fall within Labor Law § 240 (1) and accordingly would affirm.

Plaintiff alleges that he was directed by his foreman to re-cover a concrete slab that had been broken off the roof of the tunnel and was being hoisted by crane up from the tracks below to a street-level platform on which he was standing. The slab, which was chain-bound or shackled, began to spin as it came down. Plaintiff, in an effort to steady the load and guide it down, reached for the cable, and one of the chain binders opened. The release of tension on the chain propelled the shackle handle into plaintiff's leg, which was shattered by the impact.

I disagree with the majority that *Melo v Consolidated Edison Co.* (92 NY2d 909) addressed substantially similar circumstances to those herein. In *Melo,* by means of a chain with a hook at either end, one edge of a steel traffic plate was attached to the shovel part of a backhoe and raised to a vertical position, and the plate was dragged along the ground to be placed over a trench. As the plate was being maneuvered over the trench, the hook on the plate became unfastened and the plate fell over, striking plaintiff's shoulder and foot. The Court of Appeals held that, since both the plate and the plaintiff were on ground level, plaintiff's activities did not fall within the special elevation risks contemplated by Labor Law § 240 (1).

Here, plaintiff was at ground level but the slab was being lowered to ground level. He testified that he was struck by the shackle handle, which was forced out of position by the opening of the chain binder, before the slab had settled on the platform. The question therefore is whether the force of gravity on the descending slab caused the chain binder to open because the slab was not secured adequately in the chain rigging or was otherwise improperly hoisted. The purpose of section 240 (1) is "to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*" (*Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494, 501 [emphasis in original]). The majority emphasizes that nothing

fell here, but if the shackle handle was propelled out of its position and into plaintiff's leg because the lowering of the slab caused the chain binder to open, then the harm to plaintiff was as much a consequence of the application of the force of gravity to the slab as it would have been if the slab itself had fallen when the chain binder opened.