■ ANDRE THOMPSON, Appellant, v ST. CHARLES CONDOMINIUMS et al., Defendants, and STRIVERS' ROW ASSOCIATES, L.P., et al., Respondents. STRIVERS' ROW ASSOCIATES, L.P., Third-Party Plaintiff-Respondent, et al., Third-Party Plaintiff, v J&R BRICK MASONRY, INC., et al., Third-Party Defendants-Respondents. [756 NYS2d 530] —Order, Supreme Court, Bronx County (Alan Saks, J.), entered on or about April 16, 2002, which, insofar as appealed from, as limited by the brief, dismissed plaintiff's Labor Law § 240 (1) cause of action, unanimously reversed, on the law, without costs, so as to reinstate that cause of action, partial summary judgment on the issue of liability under that section granted in favor of plaintiff and against defendant NYC Partnership Housing Development Fund (NYC Partnership), and the matter remanded for further proceedings.

Plaintiff was employed as a mason tender at a construction site at 138th Street and Eighth Avenue, involved in the construction of a three-story building, part of a planned housing development known as St. Charles Condominiums. He was assigned the task of placing cinder blocks and pans of mortar onto a four-foot-high sawhorse scaffold, on which a bricklayer would then stand in order to work. Plaintiff had placed on the scaffold approximately 20 masonry blocks weighing some 40 pounds each, and two pans of mortar weighing some 60 pounds each. When the bricklayer climbed onto it, the scaffold collapsed, causing the cinder blocks and the bricklayer to fall on plaintiff, injuring him.

The work site was owned by defendant NYC Partnership, and defendant Strivers' Row Associates, a limited partnership, was the developer of the site.

Plaintiff sought partial summary judgment on the issue of liability on his Labor Law claims against Strivers' Row and NYC Partnership. Third-party defendants J&R Brick Masonry, Inc. and J.R.P. Construction Co., Inc., sought summary judgment dismissing plaintiff's Labor Law § 240 (1) claims.

The motion court denied plaintiff's cross motion for partial summary judgment and, upon searching the record, granted summary judgment dismissing the Labor Law § 240 (1) claims, concluding that plaintiff had not been exposed to an elevation-related hazard as envisioned by that Labor Law provision. We disagree with this reasoning, reinstate the Labor Law § 240 (1) claim, and grant plaintiff partial summary judgment on that claim as against NYC Partnership as owner of the property.

As the Court explained in *Rocovich v Consolidated Edison Co.* (78 NY2d 509, 514 [1991]), Labor Law § 240 (1) is intended to protect against risks caused by "the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured." With this concern at the forefront, section 240 (1) imposes strict liability on owners and contractors for accidents arising from the absence of, or defects in, such protective devices as ladders and scaffolds. Here, "materials or loads" were being positioned on a scaffolding device, and a defect in that device caused the materials and loads to fall and injure plaintiff.

The distinction to be made is between the "special elevation risks contemplated by the statute," which give rise to liability, and "the usual and ordinary dangers of a construction site," which do not (*see Rodriguez v Tietz Ctr. for Nursing Care*, 84 NY2d 841, 843-844 [1994]). The work site itself must be "elevated" above or "positioned below the area where materials

or load are hoisted or secured" (*see Melo v Consolidated Edison Co.*, 246 AD2d 459, 460 [1998] [*affd* 92 NY2d 909 (1998)], citing *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]; *accord Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). The statute applies only "where the work involves risks related to differences in elevation" (*see Groves v Land's End Hous. Co.*, 80 NY2d 978, 980 [1992]).

Defendants contend that plaintiff's claim must fail because there was not a "significant" height differential between the level at which the plaintiff was situated and the level from which the items (and bricklayer) fell. However, there is no "seven-foot rule" or other definitive height differential at which section 240 (1) begins to apply. Elevation differentials have been considered insignificant in circumstances where "the object had been positioned at the same level as the work site so that there was no fall from an elevated work site" (*Daley v City of N.Y. Metro. Tr. Auth.*, 277 AD2d 88, 90 [2000], quoting *Melo v Consolidated Edison Co., supra*, 246 AD2d at 461). While the absence of any appreciable height differential between the falling objects and the plaintiff could call into question the applicability of section 240 (1) (*see Capparelli v Zausmer Frisch Assoc.*, 96 NY2d 259, 269 [2001]; *Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491 [1995], *affg* 209 AD2d 931, 932 [1994]; *Malecki v Wal-Mart Stores*, 222 AD2d 1010 [1995]), the statute must still apply to the collapse of a scaffold, the purpose of which is to hold construction supplies and workers at a raised level. That it was "only" four feet above the ground does not constitute a basis for ignoring the requirements of section 240 (1), especially when liability is based upon a defect in a protective device specifically listed in the statute.

Defendants' reliance on *Narducci v Manhasset Bay Assoc.* (96 NY2d 259 [2001]) is misplaced. The incident there, in which plaintiff was struck by falling glass, was caused merely by gravity, not by any absence of, or defect in, a protective device needed for the job.

Indeed, where a safety device has been furnished, and it collapses, a prima facie case of liability under Labor Law § 240 (1) is established (*see Aragon v 233 W. 21st St.*, 201 AD2d 353 [1994]). We conclude that this is so whenever the employee is injured as a result of this collapse, regardless of whether the employee was *on* or *under* the scaffold when it collapsed (*see Smith v Jesus People*, 113 AD2d 980, 982 [1985]; *Callovi v Olympia & York Battery Park Co.*, 663 F Supp 855, 858 [1987]).

Finally, as to the contention of Strivers' Row that it may not be held liable under Labor Law § 240 (1) because it was nei-

ther owner nor general contractor, we do not find sufficient support to entitle it to dismissal of the claim on that basis. It was Strivers' Row that contracted with the title owner of the property, NYC Partnership, for development of the site, and the site development agreement refers to Strivers' Row as the "Builder." Further, the agreement specifies that "The Builder shall perform the work necessary to clear the Site and to construct the Improvements on the Site in accordance with the plans and specifications * * *." This provision clarifies the position of Strivers' Row as the entity responsible at the outset for the actual construction of the project. Moreover, riders to the contract refer to the parties to the contract as "Owner" and "Contractor." It is apparent that the contract gave Strivers' Row "the right to hire or fire subcontractors" (*see Frierson v Concourse Plaza Assoc.*, 189 AD2d 609, 611 [1993]). Therefore, its position cannot be equated with that of an architect or engineer which, having only a limited, proscribed role in the construction project, may not be held liable under Labor Law § 240 (1) (*see Fox v Jenny Eng'g Corp.*, 122 AD2d 532 [1986], *affd* 70 NY2d 761 [1987]).

Moreover, the site development plan, while it provides that "project management" will be handled by Hancock Construction Corp., makes no mention about Strivers' Row contracting with another entity to serve as general contractor, although the document acknowledges that work will be subcontracted out.

Strivers' Row states that it hired another defendant, Integrated Development Corporation, to serve as the "general contractor." However, while Avery Seavey, an officer of a general partner of Strivers' Row, indicated in his deposition that Strivers' Row hired a general contractor to handle the on-site work, he failed to provide enough specifics to establish that its obligations under the site development agreement were completely transferred. The subcontract submitted in support of Strivers' Row's position, between Integrated Building Systems as contractor and J&R Brick Masonry, Inc. as subcontractor, lends some support to the claim, since it names Integrated as contractor. Notably, however, it names Strivers' Row as "Owner."

Both owners and general contractors are strictly liable for providing the necessary devices to protect workers' safety under Labor Law § 240 (1). While it is still possible that Strivers' Row successfully and properly transferred its obligations as general contractor to Integrated Systems Management, the submissions on the motion before us are insufficient to make

the necessary showing to permit that legal conclusion here. Concur—Mazzarelli, J.P., Saxe, Sullivan, Rosenberger and Lerner, JJ.