■ LUIS MEDINA, Appellant, v CITY OF NEW YORK, Respondent. [929 NYS2d 582]—

Plaintiff, an inspector for the New York City Transit Authority (TA), was injured on September 17, 2005 while inspecting a subway rail. Plaintiff was standing on the track bed when a 12-foot section of the rail, unsecured and weakened by saw cuts, suddenly sprang upward and then fell, striking his leg. Plaintiff brought this action asserting claims pursuant to, inter alia, Labor Law § 240 (1) and § 241 (6).

During the liability portion of the bifurcated trial, plaintiff testified that he was installing new track. He stated that this was part of a subway system modification project and not a repair project to replace worn rails. At the time of his accident, plaintiff and his crew were attempting to "strip" and remove a rail.

The operating superintendent for the track department of TA testified at trial that during three attempts to cut the rail, the saw blade jammed, indicating that the rail was expanding. He explained that the welded rails could expand significantly due to temperature variations, placing the rails under significant compression tension. The superintendent testified that typically spike anchors were installed every 10 feet to keep the rails from expanding and moving vertically or laterally. However, his post-accident investigation revealed that there were no anchors in place along a 600-foot section of rail that included the section where plaintiff was injured. The superintendent testified that he did not know how long the anchors had been missing, but

the fact that there were no anchors should have been discovered during twice-weekly track inspections.

The superintendent characterized plaintiff's work as "routine maintenance." However, he later conceded that the upgrade to the D subway line was part of a five-year signal improvement contract, which entailed replacement of 400 to 500 obsolete signal rails that were incompatible with updated braking and signaling systems.

At the close of plaintiff's case, the parties moved for directed verdicts. Defendant contended that plaintiff was engaged in routine maintenance and that his work did not pose an elevation-related risk as contemplated by section 240 (1). Defendant further contended that with regard to the section 241 (6) claim, plaintiff was not engaged in "demolition" within the meaning of Industrial Code (12 NYCRR) § 23-3.3. Plaintiff argued that the work was "alteration" pursuant to section 240 (1) and/or "demolition," which is covered by both sections of the Labor Law.

On March 1, 2010, a judgment on the verdict was entered in favor of defendant on the ground that plaintiff's work was "routine maintenance" and therefore not within the scope of the Labor Law. For the reasons set forth below, we find that plaintiff's section 240 (1) claim was properly dismissed, but that the court erred in dismissing plaintiff's section 241 (6) claim.

A directed verdict may be rendered where the court finds that, "upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (*Sorrentino v Fireman*, 13 AD3d 122, 123 [2004], quoting *Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). The facts established at trial must be considered in the light most favorable to plaintiff, and the court must afford plaintiff every favorable inference which may properly be drawn from those facts (*Sorrentino* at 123; *Villoch v Lindgren*, 269 AD2d 271 [2000]). Applying this standard, defendant's motion for a directed verdict on plaintiff's Labor Law § 241 (6) claim should have been denied.

In order to recover under section 241 (6), a plaintiff must demonstrate that there was a violation of a specific regulatory provision of the Industrial Code which resulted in his injury (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 350 [1998]). 12 NYCRR 23-3.3 (c), the section relied upon by plaintiff, requires "continuing inspections" during "hand demolition operations" to protect against hazards "resulting from weakened or deteriorated floors or walls or from loosened material." "Demolition" is defined in the Industrial Code as "work incidental to or as-

sociated with the total or partial dismantling or razing of a . . . structure including the removing or dismantling of machinery or other equipment" (12 NYCRR 23-1.4 [b] [16]).

Under this definition, the removal and dismantling of the rail constituted demolition of a structure. The record supports the view that the repeated saw cuts loosened the rail, rendering it unstable. We find that on this record, the stressed rail was the kind of hazard contemplated by section 23-3.3 (c) (*see e.g. Wade v Atlantic Cooling Tower Servs., Inc.*, 56 AD3d 547 [2008]). We further find questions of fact on the existing trial record as to whether defendant conducted the "continuing inspections" required by section 23-3.3 (c) (*see e.g. Salinas v Barney Skanska Constr. Co.*, 2 AD3d 619, 622-623 [2003]).

Furthermore, uncontradicted testimony establishes that the rails at issue were being removed for the purpose of upgrading the subway signal system, and not because they were worn, and that the "general context of the work" was a five-year capital improvement contract. These factors raise triable issues that militate against a finding, as a matter of law, that plaintiff was engaged in routine maintenance (*see Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878, 881-882 [2003]; *Joblon v Solow*, 91 NY2d 457, 466 [1998]; *cf. Esposito v New York City Indus. Dev. Agency*, 1 NY3d 526, 528 [2003]). Thus, the court should not have directed a verdict for defendant dismissing plaintiff's section 241 (6) claim (*see Koren-DiResta Constr. Co. v New York City School Constr. Auth.*, 2 AD3d 114 [2003]; *see e.g. Hamill v Mutual of Am. Inv. Corp.*, 79 AD3d 478 [2010]).

We find, however, that plaintiff's Labor Law § 240 (1) claim was properly dismissed, albeit on different grounds. In order to recover under section 240 (1), the hazard to which plaintiff was exposed must have been one "directly flowing from the application of the force of gravity to an object or person" (*Prekulaj v Terano Realty*, 235 AD2d 201, 202 [1997], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494 [1993]). Here, the rail was propelled by the kinetic energy of the sudden release of tensile stress in the steel rail. Thus, plaintiff's injuries were not the result of the effects of gravity (*see Daley v City of New York Metro. Transp. Auth.*, 277 AD2d 88 [2000]). Concur—Andrias, J.P., Friedman, Catterson, Renwick and DeGrasse, JJ.