[942 NYS2d 533]

Carlos Garcia, Respondent, v 225 East 57th Street Owners, Inc., Appellant.

First Department, April 26, 2012

## APPEARANCES OF COUNSEL

*Thomas D. Hughes*, New York City (*Richard C. Rubinstein* of counsel), for appellant.

*Ephrem J. Wertenteil*, New York City, and *Hecht, Kleeger, Pintel & Damashek*, New York City, for respondent.

## OPINION OF THE COURT

CATTERSON, J.

In this personal injury action in which the plaintiff alleges a violation of Labor Law § 241 (6), the critical inquiry is not whether the plaintiff was engaged in the demolition or "dismantling" of a structure. Rather, we must decide if the breaking of a mirrored panel that injured plaintiff is the type of hazard contemplated by the Industrial Code provisions that plaintiff alleges were violated.

The following facts are undisputed: The plaintiff Carlos Garcia was employed by nonparty JMPB Enterprises, LLC as a laborer. The defendant owns a 22-story cooperative apartment building in Manhattan and contracted with JMPB to remove wall coverings including mirrored wall panels. JMPB was then to plaster, prime, and paint the walls.

The two-by-eight-foot panels were affixed to the surface of the walls with adhesive. The plaintiff removed the panels by wedging a spatula between the panel and the drywall. The plaintiff then tapped the spatula with a hammer to pry the panel loose. Several of the panels had broken while being removed. On January 16, 2007, the plaintiff was injured when a piece of panel he was removing broke and cut his hand.

The plaintiff commenced this action on April 23, 2007, alleging common-law negligence and violations of the Labor Law. After discovery, the defendant moved for summary judgment seeking dismissal of the complaint. In a decision and order dated March 10, 2011, the motion court granted summary judgment dismissing the Labor Law §§ 200 and 240 (1) and common-law negligence claims and the Labor Law § 241 (6) claim based on

12 NYCRR 23-1.7 (e) (1) and (2) and an alleged OSHA violation, and denied that part of the motion seeking dismissal of plaintiff's section 241 (6) claim insofar as it was based on 12 NYCRR 23-3.3 (b) (3) and (c) on the ground that the plaintiff raised a triable issue of fact as to whether the work being performed on the premises was demolition. For the reasons set forth below, we reverse, and dismiss the remainder of the section 241 (6) claim.

In relevant part, Labor Law § 241 (6) states:

> "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein . . . The commissioner may make rules to carry into effect the provisions of this subdivision."

The Commissioner's rules are set forth in the Industrial Code, 12 NYCRR part 23, which defines demolition work as:

> "work incidental to or associated with the total or partial dismantling or razing of a building or other structure including the removing or dismantling of machinery or other equipment." (12 NYCRR 23-1.4 [b] [16].)

We have held that, in order to constitute demolition, the work must "involve changes to the structural integrity" of a building or structure. (*Cardenas v One State St., LLC*, 68 AD3d 436, 439 [2009] [internal quotation marks omitted].)

On appeal, the plaintiff relies on *Pino v Robert Martin Co.* (22 AD3d 549 [2d Dept 2005]) to argue that he was injured while "dismantling a structure" and therefore he was engaged in demolition work in the context of Labor Law § 241 (6). In *Pino*, the Second Department found that a shelving unit was a structure under section 241 (6), because it was a "production or piece of work artificially built up or composed of parts joined together in some definite manner." (22 AD3d at 552 [internal quotation marks omitted].) However in that case, the Second Department appeared merely to adopt a definition used in the analysis of two cases alleging violations of Labor Law § 240 (1). (*See Joblon v Solow*, 91 NY2d 457, 464 [1998], quoting *Lewis-Moors v Contel of N.Y.*, 78 NY2d 942, 943 [1991].) These decisions, in turn, relied upon the hoary authority of *Caddy v Interborough R.T. Co.* (195 NY 415, 420 [1909]).

In *Caddy*, the 1897 statute at issue required employers to furnish scaffolding to workers engaged in the "erection, repairing, altering or painting of a house, building or structure." The purpose of the statute, as in the current Labor Law § 240 (1), was to protect workers from elevation-related hazards. The Court found that in addition to buildings and houses, the statute encompassed other "structures" for which scaffolding would be required. "Structure" was broadly construed in 1909 in order to effectuate the purpose of the statute of 1897. In the case of section 240 (1) claims, we still broadly construe the statute to protect workers from falling from a height or being struck by a falling object.

However, Labor Law § 241 (6) is different in scope from section 240 (1). Section 241 was enacted to protect workers from industrial accidents specifically in connection with construction, demolition or excavation work. (*Nagel v D & R Realty Corp.*, 99 NY2d 98, 102 [2002].) Section 241 (6) places a nondelegable duty upon owners and contractors "to provide reasonable and adequate protection and safety" for workers. The scope of that duty in section 241 (6) is circumscribed by the specific safety rules set forth in the Industrial Code. (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-502 [1993].)

By its terms, therefore, section 241 (6) "require[s] reference to outside sources to determine the standard by which a defendant's conduct must be measured." (81 NY2d at 503 [internal quotation marks omitted] [the provision "contemplates the establishment of specific detailed rules through the Labor Commissioner's rule-making authority"].) In other words, unlike section 240 (1), to establish liability under this provision, a plaintiff "must specifically plead and prove the violation of an applicable Industrial Code regulation." (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 271 [1st Dept 2007], *lv denied* 10 NY3d 710 [2008].)

Here, in support of his claims, the plaintiff relies on section 23-3.3 (b) (3): "Demolition by hand" of "walls and partitions," which requires that: "[w]alls, chimneys and other parts of any building or other structure shall not be left unguarded in such condition that such parts may fall, collapse or be weakened by wind pressure or vibration." The plaintiff also relies on section 23-3.3 (c) which requires that:

> "continuing inspections shall be made by designated
> persons as the work progresses to detect any

hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material. Persons shall not be suffered or permitted to work where such hazards exist until protection has been provided by shoring, bracing or other effective means."

The court below observed that "one could conclude" that the broken mirror was "a hazard arising from a 'loosened material' as [the] defendant failed to guard the glass mirror from falling in large broken pieces." However, the court interpreted "loosened material" too broadly. The cited provisions have been construed as specific safety rules designed to protect a worker from the hazards created when a structure is *weakened* by the *"progress of the demolition." (Smith v New York City Hous. Auth.*, 71 AD3d 985, 987 [2d Dept 2010] [emphasis added]; *Campoverde v Bruckner Plaza Assoc., L.P.*, 50 AD3d 836, 837 [2d Dept 2008].) Thus, "loosened material" must be material loosened by the "progress" of demolition. This loosening material might evade notice until it "fall[s]" or "collapse[s]" and injures a worker. This does not encompass material which is being loosened deliberately.

Hence, in *Medina v City of New York* (87 AD3d 907 [1st Dept 2011]), we found a section 241 (6) violation based on 12 NYCRR 23-3.3 (c) where the plaintiff was injured when a section of subway rail, which he was cutting, sprang free and fell on him, injuring his leg. We found that the stressed rail was the kind of hazard contemplated by section 23-3.3 (c) since "repeated saw cuts loosened the rail, rendering it unstable." (87 AD3d at 909.) In that case, we found that continued inspections would have detected the hazard of the stressed rail.

In *Ortega v Everest Realty LLC* (84 AD3d 542 [1st Dept 2011]), the plaintiff was injured when the wall of an aluminum shed fell on him as he was sawing through it. We found that, if the plaintiff could demonstrate at trial that the wall fell as a result of structural instability caused by the vibrations from the plaintiff's saw cutting, he could go forward with his section 241 (6) claim based on violations of Industrial Code § 23-3.3 (b) (3) and (c). (*Ortega*, 84 AD3d at 545.) In that case, there was no dispute that the defendants had failed to make any inspections, and we determined that the required inspections and shoring might have protected the plaintiff from the hazard of a wall weakened by the progress of demolition.

The Second Department's determination in *Smith v New York City Hous. Auth.* (71 AD3d 985 [2010]) is particularly instruc-

tive. In *Smith*, the court found that 12 NYCRR 23-3.3 (b) (3) and (c) did not apply to the plaintiff's claim. The plaintiff was using a jackhammer to demolish a four-foot wall. He was chipping away at the mortar surrounding a cinder block in order *to dislodge it* when it fell along with one or two other blocks that were attached and injured him. The court found that the hazard of the falling bricks arose from the performance of the demolition work, and not from structural instability caused by the progress of demolition. (*See also Ofri v Waldbaum, Inc.*, 285 AD2d 536 [2d Dept 2001].)

It is clear, therefore, that the code provisions cited by the plaintiff are inapplicable to his claim, and therefore even if we accepted that the plaintiff was engaged in the demolition or dismantling of a structure, his claim cannot survive the defendant's summary judgment motion: The mirrored panel did not break because it was weakened by the progress of demolition or dismantling, and therefore neither shoring or bracing or continued inspections could have prevented it from breaking and injuring plaintiff.

In this case, the plaintiff was deliberately loosening the mirror in order to remove it from the wall, and it broke as he was removing it. The hazard therefore arose from the actual performance of his work, and not from structural instability caused by the progress of other demolition work. To guard, shore, or brace the mirror would have precluded the plaintiff from performing the task of removing the mirror. Thus, the provisions of the Industrial Code relied upon by the plaintiff could not have protected him, and so cannot support his claim.

Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J.), entered March 10, 2011, which, insofar as appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing the Labor Law § 241 (6) cause of action to the extent it is based on violations of Industrial Code (12 NYCRR) § 23-3.3 (b) (3) and (c), should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

Tom, J.P., Andrias, Abdus-Salaam and Román, JJ., concur.

Order, Supreme Court, New York County, entered March 10, 2011, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.