■ Cavit Sarigul et al., Appellants, v New York Telephone Company, Defendant and Third-Party Plaintiff-Respondent. Cablevision Systems Corporation, Third-Party Defendant-Respondent. (And Other Actions.) [772 NYS2d 653]—

Order, Supreme Court, New York County (Louis York, J.), entered on or about August 26, 2002, which, insofar as appealed from, granted the motion of defendant New York Telephone Company (NYTel) for summary judgment dismissing the complaint and the third-, fourth- and fifth-party complaints, affirmed, without costs.

Plaintiff Cavit Sarigul, an employee of Amplified Wiring Systems, a cable installation company, sustained personal injuries while stripping the insulation from a preexisting cable wire owned by Cablevision Systems Corporation. At the time of the occurrence, plaintiff was positioned on a 28-foot ladder anchored to a NYTel telephone line which, in turn, was attached to a NYTel telephone pole.

NYTel subsequently moved for summary judgment dismissing the complaint against it. Although this motion was made beyond the 60-day deadline prescribed by the IAS court's rules, the IAS court granted NYTel's motion and, upon a search of the record, dismissed the remaining third-, fourth- and fifth-party complaints, finding, inter alia, that NYTel was not the owner of the subject cable line being altered by plaintiff at the time of the incident and did not otherwise act in the capacity of the owner within the ambit of Labor Law § 240 (1).

In relevant part, section 240 (1) provides that, in the course of altering a structure, all contractors and owners and their agents who contract for—but do not direct or control—the work shall furnish safety equipment to their employees to protect them against the dangers incident to the alteration. We agree with the IAS court that the subject telephone pole and its wiring were a "structure" under the statute (*see Joblon v Solow*, 91 NY2d 457 [1998]; *Lewis-Moors v Contel of N.Y.*, 78 NY2d 942, 943 [1991]; *Garrant v New York Tel. Co.*, 179 AD2d 960 [1992]), and that stripping the insulation from the subject cable wire was an "alteration" under the statute (*see Weininger v Hagedorn & Co.*, 91 NY2d 958 [1998]).

The IAS court also properly determined that NYTel neither was an "owner" of the subject cable wire that plaintiff was altering at the time of the incident nor otherwise acted in the capacity of an owner (*see Lacey v Long Is. Light. Co.*, 293 AD2d 718 [2002]; *Ray v Niagara Mohawk Power Corp.*, 256 AD2d 1070 [1998]; *Fuller v Niagara Mohawk Power Corp.*, 213 AD2d

986 [1995], *lv denied* 86 NY2d 708 [1995]). It has been held that the key in ascertaining whether a nontitleholder party is an "owner" under the statute is the " 'right to insist that proper safety practices were followed and it is the right to control the work that is significant, not the actual exercise or nonexercise of control' " (*Lacey v Long Is. Light. Co.*, 293 AD2d at 719, quoting *Copertino v Ward*, 100 AD2d 565, 567 [1984]). Applying this rationale to the instant matter, we find that NYTel was not the "owner" of the cable wire that was being altered by plaintiff at the time of the incident.

While it would appear that *Coleman v City of New York* (91 NY2d 821 [1997]) and *Gordon v Eastern Ry. Supp.* (82 NY2d 555 [1993]) cited by the dissent, are not consistent with *Lacey*, *Ray* and *Fuller*, the Court of Appeals, two years after *Gordon* was decided, denied review in *Fuller* (86 NY2d 708 [1995]), a case in which the facts are strikingly similar to the instant matter. There, the defendant owned a utility pole as did the defendant herein. The plaintiff had placed his ladder against defendant's telephone line as he altered a cable wire. He was injured when the ladder slipped and he fell. The Fourth Department determined that the defendant was not the "owner" of the cable line being repaired and did not otherwise act in the capacity of an owner.

*Lacey*, *Ray* and *Fuller* are also consistent with this Court's rule that an apartment building owner cannot be held liable to a cable repair person who is called by a tenant when the owner never "hired, or even knew of the retention of, the cable television contractor in whose employment plaintiff was at the time of the accident giving rise to the within action" (*Ceballos v Kaufman*, 249 AD2d 40 [1998]; *see also Abbatiello v Lancaster Studio Assoc.*, 307 AD2d 788 [2003]; *Brown v Christopher St. Owners Corp.*, 211 AD2d 441, 442 [1995], *affd* 87 NY2d 938 [1996]). Inasmuch as NYTel did not hire or even know of the retention of Amplified, for whom plaintiff worked at the time of the occurrence, the section 240 (1) claim against NYTel was properly dismissed.

Similarly, the section 241 (6) claim against NYTel was also properly dismissed by the IAS court since plaintiff's work in altering the cable wire was not part of a "construction, demolition or excavation" of a structure (*see Nagel v D & R Realty Corp.*, 99 NY2d 98 [2002]).

Lastly, the IAS court properly determined that NYTel had demonstrated the requisite "good cause" for the de minimis delay in making its summary judgment motion pursuant to CPLR 3212 (a) (*see Fainberg v Dalton Kent Sec. Group*, 268

AD2d 247, 248 [2000]; *cf. Carvajal v M. Madison LLC*, 297 AD2d 550 [2002]). In the instant matter, NYTel was prepared to make a timely summary judgment motion under the IAS court's prescribed discovery timetable, but delayed making it upon the express request of a court-appointed coordinator/mediator. Concur—Nardelli, J.P., Sullivan, Rosenberger and Lerner, JJ.

Mazzarelli, J., dissents in part in a memorandum as follows: Plaintiff, an employee of Amplified Wiring Systems, was injured while attempting to connect a cable line to preexisting Cablevision hardware on a pole owned by defendant New York Telephone Company (NYTel). The pole was outside the home of a Cablevision customer in Amityville, New York.

Immediately preceding the accident, plaintiff had run a cable line out of the customer's home which he intended to connect to the hardware. Plaintiff attached the two hooks on the top of his ladder to the NYTel transmission line. Plaintiff also hooked his safety belt to the NYTel line.

While attempting to strip the cable wires to connect them, a gust of wind blew, causing plaintiff's ladder to shift. As he struggled to maintain his balance, the end of the Cablevision line struck and pierced his right eye, causing injuries. These necessitated surgery and resulted in 60% loss of vision in that eye.

The pole had a NYTel transmission line which was strung one to two feet below the Cablevision line, and an electricity line attached to its top. NYTel charged Cablevision a fee to use this and other utility poles for the maintenance of cable TV hardware. Plaintiff's employer, Amplified, which is in the business of installing cable, sold him the ladder and other equipment he was using on the day of his accident.

Plaintiff brought this action against NYTel, claiming violations of Labor Law § 240 (1) and § 241 (6). NYTel then commenced a third-party action against Cablevision, Cablevision impleaded Amplified, and Amplified impleaded Charter Oak Fire Insurance Company.

After an unsuccessful attempt to mediate the dispute, NYTel made an untimely motion for summary judgment. The IAS court granted the motion. It found that NYTel had a proper reason for delay, and that while the installation plaintiff was performing was an "alteration" within the meaning of the Labor Law, NYTel was not an "owner or agent of the owner" of the cable television wires, as defined by that statute. The IAS court also held that all of the additional claims were academic if plaintiff did not have an action against NYTel.

I would hold NYTel responsible for ensuring proper safety

practices on its property under Labor Law § 240 (1). Section 240 (1) was enacted to protect laborers, and it places a nondelegable duty upon owners, contractors and their agents to provide protection against the hazards involved in the covered activities. The Court of Appeals has consistently reaffirmed that section 240 (1) " 'is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed' " (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991], quoting *Quigley v Thatcher*, 207 NY 66, 68 [1912]; *see also Panek v County of Albany*, 99 NY2d 452, 457 [2003]; *Joblon v Solow*, 91 NY2d 457, 463 [1998]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]).

A telephone pole, its attached hardware and supporting systems, including the wiring, has been considered a "structure" under section 240 (1) (*Garrant v New York Tel. Co.*, 179 AD2d 960 [1992]; *Lewis-Moors v Contel of N.Y.*, 167 AD2d 732 [1990], *affd* 78 NY2d 942 [1991]). Moreover, plaintiff was stripping a transmission line to attach it to the Cablevision hardware, a covered "alteration" under the terms of the statute, because it involved a significant change to the composition of the structure (*see Weininger v Hagedorn & Co.*, 91 NY2d 958 [1998]; *Joblon v Solow, supra*).

The IAS court premised its dismissal of the section 240 (1) claim upon the fact that NYTel was not an "owner" charged with responsibility for safety practices under the terms of the statute. I disagree. In *Gordon v Eastern Ry. Supply* (82 NY2d 555 [1993]) the Court of Appeals rejected a similar contention. The *Gordon* plaintiff worked for a railroad car services company, was cleaning the exterior of a railroad car with a sandblaster when he fell off a ladder, lost control of the sandblaster, and was injured when it sprayed him with sand. He sued the owner of the sandhouse where the accident occurred, alleging a violation of section 240 (1). The defendant argued that it could not be liable because it had leased its property to another company, it had not contracted to have the work done, and the work was not being done for its benefit. The Court of Appeals disagreed, finding it relevant that the presence of the railroad car on the defendant owner's property was a direct result of the defendant's actions and established a sufficient nexus for liability to attach (*id.* at 560).

Facts similar to those presented in *Gordon* are presented here. Like the owner of the *Gordon* sandhouse, NYTel leased a portion of its utility pole to Cablevision for the attachment of its cable line. As such, NYTel is responsible for ensuring the safety of a worker altering the structure by stripping and attempting

to attach a cable wire to the utility pole, regardless of whether NYTel had supervision or control over plaintiff's work.

In *Coleman v City of New York* (91 NY2d 821 [1997]), the Court of Appeals reaffirmed its liberal construction of the term "owner" under section 240 (1), holding the defendant City liable pursuant to that section where it had no supervision or control over the work being done by the Transit Authority, without its knowledge, on its property. The *Coleman* court relied upon its earlier holding in *Gordon*, quoting that liability " 'rests upon the fact of ownership and whether [the owner] had contracted for the work or benefitted from it are legally irrelevant' " (*id.* at 822).

Citing Appellate Division cases from the Second and Fourth Departments, defendants argue that it would be inequitable to hold NYTel responsible for a worker whose presence on the utility pole was unknown to it, where it did not own the specific cable wire being altered (*see Lacey v Long Is. Light. Co.*, 293 AD2d 718 [2d Dept 2002]; *Bonghi v New York Tel. Co.*, 277 AD2d 893 [4th Dept 2000], *lv dismissed* 96 NY2d 791 [2001]; *Ray v Niagara Mohawk Power Corp.*, 256 AD2d 1070 [4th Dept 1998]; *Fuller v Niagara Mohawk Power Corp.*, 213 AD2d 986 [4th Dept 1995], *lv denied* 86 NY2d 708 [1995]). However, I would find that these authorities are inconsistent with *Gordon* and *Coleman*, and should not be followed in this Department. Those latter cases stand for the proposition that contracting with companies to use its utility pole to secure hardware for the cable wire, NYTel assumed responsibility under section 240 (1) for the safety of a worker performing statutorily covered activity on its property.

Defendants next argue that because NYTel did not hire plaintiff to do the instant cable installation, it cannot be held liable for plaintiff's injuries. In support, defendants cite cases from this Department which have absolved building owners from liability for work done on behalf of tenants on their property without their consent (*Abbatiello v Lancaster Studio Assoc.*, 307 AD2d 788 [2003]; *Bosch v 229 W. 97 Realty Assoc.*, 279 AD2d 373 [2001]; *Ceballos v Kaufman*, 249 AD2d 40 [1998]; *Brown v Christopher St. Owners Corp.*, 211 AD2d 441, 442 [1995], *affd* 87 NY2d 938 [1996]).

I see no analogy between these facts and those presented in the cited building owner cases. NYTel, the owner of this property, specifically leased portions of its utility pole for precisely the work plaintiff was doing when he was injured. Unlike the building owners in *Abbatiello, Bosch, Ceballos* and *Brown*, here NYTel expressly leased a portion of its space with the expecta-

tion that the exact work plaintiff was performing would take place there. Under the express terms of the statute, as interpreted by the Court of Appeals in *Gordon* and *Coleman*, I would find that NYTel was responsible for ensuring plaintiff's safety on its property.

Because the facts are undisputed, upon search of the record pursuant to CPLR 3212 (b), I would grant plaintiffs summary judgment on their Labor Law § 240 (1) claim (*Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110-112 [1984]; *see Hayden v 845 UN Ltd. Partnership*, 304 AD2d 499 [2003]). However, I would affirm the dismissal of plaintiff's section 241 (6) claim because his work was not part of the "construction, demolition or excavation" of a building or structure (*Nagel v D & R Realty Corp.*, 99 NY2d 98 [2002]). Because NYTel may have indemnification rights, I would reinstate the additional actions (*see Yong Hwan Chae v Lee Natl. Corp.*, 282 AD2d 317 [2001], *lv denied* 97 NY2d 602 [2001]).