■ DOROTHEA RHODES-EVANS, Respondent, v 111 CHELSEA LLC, Respondent-Appellant, and 111 EIGHTH AVENUE PARKING, LLC, Appellant-Respondent, et al., Defendant. (And a Third-Party Action.) [843 NYS2d 237]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered April 25, 2006, which, to the extent appealed from as limited by the briefs, denied the motion of defendant 111 Eighth Avenue Parking, LLC (Eighth Avenue Parking) and defendant 111 Chelsea LLC (Chelsea) for summary judgment dismissing the complaint, granted the motion of Chelsea insofar as it sought summary judgment on its contractual indemnity

claim against Eighth Avenue Parking, and denied Chelsea's motion insofar as it sought summary judgment on its common-law indemnity claim, modified, on the law, to grant Chelsea's motion for summary judgment dismissing the Labor Law § 240 (1) and § 241 (6) claims against it and, except as thus modified, affirmed, without costs or disbursements. Order, same court and Justice, entered September 21, 2006, which, to the extent appealable, denied Eighth Avenue Parking's motion for renewal, unanimously affirmed, without costs or disbursements.

Plaintiff, a Verizon field technician, was assigned to splice fiber optic cable in a cable box located in the parking garage leased by Eighth Avenue Parking from Chelsea, the building owner, to provide new digital telephone service to a tenant in the building. Plaintiff testified that the floor of the garage was littered with construction and other debris, and that she had to clear an area to place a ladder that she used to reach the cable box, located 10 to 15 feet above ground level. Unable to move a large piece of sheet metal on the floor, plaintiff placed the ladder so that at least two of its legs were on the metal. Plaintiff stood on the second rung from the top of the ladder looking for the splice on which she was to work. The box in which the splice was encased was to her right, thus necessitating that she turn the upper part of her body in that direction. As she searched for the splice, she "realized that the ladder was going backwards" and that she "was going to go along with it." To avoid falling, plaintiff "just twisted" and grabbed onto the cables and used her body to pull the ladder back into position. In so doing, she allegedly sustained a back injury. The ladder never actually fell. Nor did plaintiff. The entire episode lasted less than five seconds.

Summary judgment dismissing plaintiff's common-law negligence claim against Eighth Avenue Parking was properly denied since the record raises a triable issue as to whether that defendant had actual or constructive notice of the debris on the garage floor, which it was responsible to maintain. An issue of fact is also raised as to whether Eighth Avenue Parking fulfilled its duty to conduct reasonable inspections of the premises (see Personius v Mann, 5 NY3d 857 [2005], modfg 20 AD3d 616 [2005]; Campbell v City of New York, 32 AD3d 703, 704 [2006]; Weller v Colleges of the Senecas, 217 AD2d 280, 285 [1995]).

Chelsea's claim that it is not an "owner" within the meaning of Labor Law § 240 (1) is without merit. The cable box was affixed to a wall in the garage and is properly considered a part of the building for the purposes of the statute (see Izrailev v Ficarra Furniture of Long Is., 70 NY2d 813, 815 [1987]; Gonzalez

*v City of New York*, 269 AD2d 493 [2000]). Notably, Chelsea granted Verizon permission to work on the cable in the garage and arranged for its engineers to accompany Verizon workers to the work site. Thus, Chelsea exercised its authority as "owner" (*cf. Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46 [2004]; *Sarigul v New York Tel. Co.*, 4 AD3d 168 [2004], *lv denied* 3 NY3d 606 [2004]).

On the other hand, Chelsea's claim that plaintiff is not entitled to any relief under Labor Law § 240 (1) since she was not engaged in construction-related activity is well taken. In order to be entitled to the statutory protection, a worker must establish that he or she sustained injuries while engaged in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" (Labor Law § 240 [1]). Here, plaintiff's job, as she described it, was to "locate a certain fiber and splice it into an existing fiber in the building." In denying summary judgment dismissing the complaint against Chelsea, the motion court held that the work in which plaintiff was engaged constituted an alteration. The Court of Appeals has held that "altering" within the meaning of Labor Law § 240 (1) "requires making a *significant* physical change to the configuration or composition of the building or structure" (*Panek v County of Albany*, 99 NY2d 452, 457-458 [2003], quoting *Joblon v Solow*, 91 NY2d 457, 465 [1998]). Nothing in this record suggests that in splicing a fiber optic cable located in a box plaintiff was making a significant physical change to the garage or building.

Splicing a fiber into preexisting fiber optic cable for one tenant in a building does not effect a "significant physical change to the configuration or composition of the building or structure" and does not amount to an alteration under Labor Law § 240 (1) (*see Joblon v Solow*, 91 NY2d at 465; *see also Lioce v Theatre Row Studios*, 7 AD3d 493 [2004] [plaintiff who fell from ladder while installing lights for a theatrical production not engaged in activity covered by Labor Law § 240 (1)]; *DiBenedetto v Port Auth. of N.Y. & N.J.*, 293 AD2d 399 [2002], *lv denied* 98 NY2d 610 [2002] [plaintiff's work involving the removal of two bolts and the replacement of a part of a crane did not involve a significant physical change]; *Rowlett v Great S. Bay Assoc.*, 237 AD2d 183 [1997], *lv denied* 90 NY2d 809 [1997] [changing electrical switch on rooftop air conditioner so that unit can be turned off for season not protected activity under section 240 (1)]).

Nor can it be concluded that the cable was a structure within the meaning of Labor Law § 240 (1). *Campbell v City of New York* (32 AD3d at 704-705) and *Sarigul v New York Tel. Co.* (4

AD3d at 169-170), where plaintiffs, respectively, were splicing an amplifier box into a cable television line and stripping the insulation from a preexisting cable wire, do not require a contrary conclusion. In both *Campbell* and *Sarigul*, the Court held that working on cable lines which were connected to utility poles constituted alterations to a structure under Labor Law § 240 (1). These conclusions are justified in light of *Smith v Shell Oil Co.* (85 NY2d 1000, 1001 [1995]), where the Court of Appeals reiterated that a "telephone pole with attached hardware, cable and support systems constitutes a structure under Labor Law § 240 (1)" (*see also Lewis-Moors v Contel of N.Y.* (78 NY2d 942 [1991]). Thus, while a free-standing utility pole and attached cable may be considered a structure, no such claim can be made for the cable in this case, contained in a cable box mounted on a garage wall.

Plaintiff was not, as the dissent concludes, "working on a building," but rather working on a cable box which happened to be attached to the wall of a building. In any event, "working on a building" is insufficient for the imposition of section 240 (1) liability. As noted, an alteration under that statute "requires making a *significant* physical change to the configuration or composition of the building or structure" (*Panek*, 99 NY2d at 457-458, quoting *Joblon*, 91 NY2d at 465).

No fair reading of the record supports plaintiff's claim that she was "installing a new and enhanced fiber optic telephone system . . . in a place where no such service previously existed." In fact, the record refutes such a claim. As plaintiff herself testified, her job assignment was "to locate a certain fiber and splice it into an existing fiber in the building." Indeed, while clearing the debris on the garage floor, she testified that she found plastic tubing through which fiberoptics run. When asked if there was plastic tubing from Verizon, plaintiff said, "No, because I do all the work in there and I always clean mine up."

Plaintiff's Labor Law § 241 (6) claim should also have been dismissed. To be entitled to the protection of section 241 (6), a worker must establish that the injury occurred in an area "in which construction, excavation or demolition work is being performed." In that regard, this Court's decision in *Sarigul v New York Tel. Co.* is controlling. There, even though the Court found that the subject telephone pole was a "structure" and that stripping cable wire was an alteration under the statute, it concluded, after reviewing the facts, that section 241 (6) did not apply, "since plaintiff's work in altering the cable wire was not part of a 'construction, demolition or excavation' of a structure" (*id.* at 170 [citation omitted]).

Plaintiff misrepresents the Court of Appeals' holding in *Nagel v D & R Realty Corp.* (99 NY2d 98 [2002]), which this Court quoted in *Sarigul.* In *Nagel,* the plaintiff argued, unsuccessfully, that because Industrial Code (12 NYCRR) § 23-1.4 (b) (13), which defines "construction work," included the term "maintenance," his routine safety inspection of an elevator fell within the embrace of section 241 (6). In rejecting the argument, the Court of Appeals analyzed the legislative history of section 241 (6) and concluded "[t]hat the Legislature sought to protect workers from industrial accidents specifically in connection with construction, demolition or excavation work" (99 NY2d at 102) and that "maintenance work that was not connected to construction, demolition or excavation of a building or structure . . . is . . . not within the statute's coverage" (*id.*).

In support of her argument that she is entitled to the protection of Labor Law § 241 (6), plaintiff adopts the "structural integrity" test articulated in *Walton v Devi Corp.* (215 AD2d 60 [1995], *lv denied* 87 NY2d 809 [1996]). In so doing, she exposes the weakness in her argument. Under no legitimate interpretation of the facts can it be said that splicing fiber optic cable "affected the structural integrity of the building or structure or was an integral part of the construction of a building or structure" (*id.* at 63). Thus, there is no merit to plaintiff's section 241 (6) claim.

The indemnification clause in the contract between Chelsea and Eighth Avenue Parking does not provide that the owner is to be indemnified for a claim arising out of its own conduct, and, thus, does not run afoul of General Obligations Law § 5-322.1 (*see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.,* 89 NY2d 786 [1997]). In any event, even if the indemnification clause were construed as absolving Chelsea for its negligence, summary judgment was properly granted on the contractual indemnity claim since there was no evidence that Chelsea was actively negligent (*see Colozzo v National Ctr. Found., Inc.,* 30 AD3d 251 [2006]; *Linarello v City Univ. of N.Y.,* 6 AD3d 192, 193-194 [2004]). Summary judgment was properly denied on Chelsea's common-law indemnification claim since it has not been established that Eighth Avenue Parking was negligent (*see Landgraff v 1579 Bronx Riv. Ave., LLC,* 18 AD3d 385, 387 [2005]). Concur—Tom, J.P., Sullivan, Nardelli and Buckley, JJ.

Mazzarelli, J., dissents in part in a memorandum as follows: I disagree with the majority's position that plaintiff is not entitled to relief under Labor Law § 240 (1) because she was not engaged in an "alteration" as that term has been defined. The plaintiff here was dispatched to 111 Eighth Avenue to splice a fiber optic

cable as part of the upgrading of phone service for a tenant in the building. The cables were in a box 10 to 15 feet above the floor. At the time of her injury, plaintiff was attempting to find the specific cable which needed to be spliced. She felt the ladder falling backwards, and injured her back as she twisted toward the wires, pulling the ladder towards the wall to steady herself. Binding precedent from the Court of Appeals and this Court dictate that plaintiff was clearly involved in an "alteration" of a building.

The Court of Appeals, in *Joblon v Solow* (91 NY2d 457 [1998]), defined "alteration" under Labor Law § 240 (1) as something which "requires making a significant physical change to the configuration or composition of [a] building or structure" (*id.* at 465). In that case, the plaintiff was injured as he was making a hole in an interior wall of an office, to route an extension cord to power a wall clock. The Court of Appeals found that this activity constituted an alteration under the statute. The Court noted that "Joblon did more than the routine act of standing on a ladder to hang a clock on a wall" (*id.* at 465).

Together with *Joblon*, the Court of Appeals decided *Weininger v Hagedorn & Co.* (91 NY2d 958 [1998]). That case also addressed the term "alteration" as used in section 240 (1). The plaintiff in *Weininger* was injured while pulling computer and telephone wires through holes in a ceiling to connect the telephone and computer in an adjoining room. Citing *Joblon*, the Court of Appeals held that this work constituted an "alteration" under Labor Law § 240 (1). It is my position that plaintiff's job of locating and splicing a telephone cable to extend upgraded telephone service to one of the tenants at the subject building, like the *Weininger* plaintiff pulling telephone and cable wire through holes to extend these services to an adjoining room, was a covered "alteration" under section 240 (1).

Subsequent to *Joblon* and *Weininger*, this Court has found a covered "alteration" in two cases which are similarly factually indistinguishable. In *Campbell v City of New York* (32 AD3d 703, 705 [2006]), we held that the act of splicing an amplifier box into a cable television line was an "alteration" under section 240 (1). In *Sarigul v New York Tel. Co.* (4 AD3d 168 [2004], *lv denied* 3 NY3d 606 [2004]), we held that stripping insulation from an existing cable wire constituted an alteration under the statute. A finding that the instant job of splicing a telephone wire was a covered "alteration" falls squarely within these holdings.

The Second Department has also interpreted "alteration" to encompass a cable wire installation (*Bedassee v 3500 Snyder*

*Ave. Owners Corp.*, 266 AD2d 250 [1999]), but not the installation of lighting for a theatrical production (*Lioce v Theatre Row Studios*, 7 AD3d 493 [2004]). *Lioce*, cited by the majority, is distinguishable on its facts and in any event not binding on this Court.

The majority cites *Panek v County of Albany* (99 NY2d 452 [2003]) to state the *Joblon* standard. However, while *Panek* did determine that there was a covered "alteration" under Labor Law § 240 (1), the crux of the *Panek* decision was that a planned demolition of a building did not preclude a finding that the same building had been altered. That holding is not relevant here. There were no plans to demolish the building where plaintiff was working.

The majority's reliance upon *DiBenedetto v Port Auth. of N.Y. & N.J.* (293 AD2d 399 [2002], *lv denied* 98 NY2d 610 [2002]), is also misplaced. In that case, plaintiff was injured when he fell from the fender of a crane while removing two bolts and replacing a part. This Court concluded that plaintiff's work did not constitute an alteration of a building or structure. However, the plaintiff in *DiBenedetto* was performing repair work, which is dissimilar to the instant plaintiff's assigned task of splicing fiber optic wire to reconfigure the wiring and upgrade a tenant's phone service.

The majority also relies on *Rowlett v Great S. Bay Assoc.* (237 AD2d 183 [1997], *lv denied* 90 NY2d 809 [1997]) which is similarly inapposite. In *Rowlett*, an air conditioning mechanic was sent to perform routine, change of season maintenance at a store in a shopping center. He was assigned to disengage the air-conditioning by changing an electrical switch (*id.* at 184). This Court held that while installation of an air conditioner might fall under section 240 (1), "routine maintenance" of an existing unit did not (*id.*). Again, unlike the plaintiff in *Rowlett*, plaintiff here was not performing routine maintenance or repair. She was spicing a fiber optic cable to provide upgraded digital phone service to a tenant in the building.

Citing *Campbell, Sarigul,* and *Lewis-Moors v Contel of N.Y.* (78 NY2d 942, 943 [1991] ["telephone pole with attached hardware, cable and support systems constitutes a structure"]), the majority contends plaintiff is not protected by section 240 (1) because the cable she was splicing was not a "structure." However, the statute covers work on either a "building or structure," and this plaintiff was working on a building. There was no telephone pole in this case, and there was no claim that the cable was a "structure." The parties do not contest the fact that the cable was the object which plaintiff was sent to splice

to complete a telephone upgrade job at the building. The contested issue is whether plaintiff's work constituted a covered alteration.

It is my firm view that under the holdings of *Weininger* and *Campbell*, plaintiff's work was a covered "alteration." Accordingly, I would conclude that plaintiff should be entitled to the protection afforded by Labor Law § 240 (1).