■ SILAS QUINONEZ, Respondent, v MANHATTAN FORD, LINCOLN-MERCURY, INC., Appellant, et al., Defendants. MANHATTAN FORD, LINCOLN-MERCURY, INC., Third-Party Plaintiff-Respondent-Appellant, v LAZ PARKING OF NEW YORK/NEW JERSEY, INC., Third-Party Defendant-Appellant-Respondent. (And Other Third-Party Actions.) [879 NYS2d 110]—

Order, Supreme Court, New York County (Deborah A. Kaplan, J.), entered March 4, 2008, which, to the extent appealed from, denied the motions of defendant Manhattan Ford and third-party defendant Laz Parking for summary judgment dismissing all claims, cross claims and counterclaims against them, unanimously reversed, on the law, without costs, Manhattan Ford's motion granted, and Laz's motion granted except with respect to Manhattan Ford's third-party claim against Laz for contractual indemnification, and the matter remanded for further proceedings.

The accident underlying this lawsuit occurred in the parking garage of an automobile dealership owned by Manhattan Ford. By written agreement, Manhattan Ford had engaged Laz as its exclusive agent to operate the garage and its affiliated valet parking operation. The agreement required Laz to manage the processing, location and movement of all vehicles entering the garage.

Customers who brought their vehicles to be serviced at the dealership between the hours of 7:30 and 10:00 A.M. initially checked in on the first floor of the garage with Manhattan Ford service personnel who were told the type of vehicle service needed. Laz valet parking attendants then drove the vehicles up a spiral ramp to Manhattan Ford's service area on the fourth floor. A freight elevator was available for use in the event a vehicle could not be driven up the ramp. After 10 o'clock the service personnel returned to their third-floor offices and incoming customers were now greeted by Laz's employees, who took the necessary information and directed the customers to Manhattan Ford's service receptionist on the third floor.

Defendant Mahmood leased and operated the Ford taxicab involved in the accident. Mahmood began his shift at 4:00 A.M. on March 31, 2005. He took the vehicle to the dealership later that morning because its brakes seemed to be "going low." While en route, Mahmood had no accidents and was able to stop the vehicle each time he applied the brakes. In fact, Mahmood had picked up approximately 15 fares before arriving at the dealership at 10:30. Upon entering the garage, he was approached by a security guard who asked why he had come in. Mahmood responded by stating: "I have the problem with the brakes, the brakes need to be checked and serviced" and "were low, going low." Mahmood exited the vehicle and proceeded to the third floor to meet with Manhattan Ford's service manager. He did not tell the service manager or anyone else that the vehicle was unsafe for driving, stating simply that the brakes needed service. In fact, Mahmood testified that he still intended to continue driving the taxi that day, even after being advised by the service manager that it could not be serviced on that day.

Plaintiff, a Laz parking attendant, drove the taxi up the ramp to the fourth-floor level. As plaintiff approached an intended parking spot, the taxi's brakes failed, causing it to crash into a parked vehicle. Plaintiff alleges in the complaint that Manhattan Ford was negligent in its operation of the dealership in failing to advise him of mechanical problems with the taxi that caused the accident.

In denying the motions, Supreme Court reached the errone-

ous conclusion that Manhattan Ford and Laz should have discovered defects with the vehicle's brakes. As noted above, Mahmood drove the taxi into the garage without difficulty and essentially reported only that he had brought the vehicle in to have the brakes serviced. Therefore, based on the information known or available, neither Manhattan Ford nor Laz had any reason to believe that operation of the vehicle would be dangerous. Generally, liability for failure to warn may exist only where there is a known danger or a danger the defendant has reason to be aware of (*see Schumacher v Richards Shear Co.*, 59 NY2d 239, 246 [1983]).

The operating agreement requires Laz to indemnify Manhattan Ford against claims and expenses including reasonable attorneys' fees, arising out of any act or omission of Laz's employees. The indemnification provision is enforceable inasmuch as it does not require that the triggering act or omission constitute negligence (*see e.g. Matter of New York City Asbestos Litig.*, 41 AD3d 299, 302 [2007]). Moreover, even if the agreement purported to indemnify Manhattan Ford against its own negligence, it would still be enforceable under General Obligations Law § 5-325, in any event, as Manhattan Ford was in fact not negligent (*see Rhodes-Evans v 111 Chelsea LLC*, 44 AD3d 430, 434 [2007]). Notwithstanding Laz's argument to the contrary, the indemnification provision would apply with respect to litigation costs and counsel fees incurred, even in the event of a dismissal of plaintiff's claims against Manhattan Ford (*see Perchinsky v Granny "G" Prods.*, 232 AD2d 34, 39 [1997], *lv dismissed* 91 NY2d 830 [1997]). Concur—Tom, J.P., Saxe, Catterson, Moskowitz and DeGrasse, JJ.