| Tiscione v Ford Found. |
|---|
| 2024 NY Slip Op 31134(U) |
| April 5, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 152143/2020 |
| Judge: David B. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. DAVID B. COHEN                     PART    58

                                            *Justice*

-----------------------------------------------------------------------X     INDEX NO.           152143/2020

PETER TISCIONE,                                                              MOTION SEQ. NO.          001

                                    Plaintiff,

                    - v -

THE FORD FOUNDATION, HENEGAN CONSTRUCTION,                          **DECISION + ORDER ON
CO., INC., THORNTON TOMASETTI, INC., GENSLER                              MOTION**
ARCHITECTURE DESIGN & PLANNING, P.C., LEVIEN &
COMPANY, INC., UNITED STRUCTURAL WORKS, INC.,

                                    Defendants.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 60, 128, 203, 204, 206, 209, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266
were read on this motion to/for                    SUMMARY JUDGMENT(AFTER JOINDER          .

In this Labor Law action, defendant Henegan Construction, Co., Inc. (Henegan) moves, pursuant to CPLR 3211(a)(3), (a)(7), and 3212, for summary judgment dismissing the complaint as against it.

## I. Factual and Procedural Background

This case arises from an incident on June 18, 2019, in which plaintiff was allegedly injured after falling into a pit while working at a building located at 320 East 43rd Street in Manhattan (the subject building), which was owned by defendant The Ford Foundation (NYSCEF Doc No. 38). Plaintiff commenced this action against defendants alleging violations of Labor Law §§ 200, 240(1), and 241(6) (Doc No. 38). Henegan joined issue by its answer dated May 27, 2020, denying all substantive allegations of wrongdoing and asserting various affirmative defenses (Doc No. 39). Henegan moves for summary dismissal of the complaint as against it, which plaintiff,

152143/2020  TISCIONE, PETER vs. FORD FOUNDATION
Motion No.  001

Page 1 of 9

The Ford Foundation, and defendant Thornton Tomasetti, Inc. (Thornton) oppose (Doc Nos. 224, 241, and 253).

*A.  Deposition of Plaintiff (Doc Nos. 41 and 42)*

At his deposition, plaintiff testified that, on the day of the incident, he was employed by nonparty Cushman and Wakefield (Cushman).  He was responsible for general maintenance throughout the subject building, which included maintaining "heating, ventilation, air conditioning, plumbing, and sprinkler systems[s]," ordering replacement materials and components, and replacing items like ceiling tiles, faucets, filters, and pumps.  When items like pumps needed replaced, he would check to see if one was available in the spare inventory kept at the subject building, otherwise he would order a replacement from a supplier.

When plaintiff was initially hired by Cushman, the subject building was undergoing construction helmed by Henegan as the general contractor.  However, he was hired separate and apart from the renovation project, and he neither worked with nor assisted Henegan with any of its work.  He only provided Henegan with information about the subject building's systems, given his familiarity with them.

On the date of his accident, although the renovation project was still ongoing, all construction work on the C level floor had been completed.  After entering the subject building and performing his routine checks, which he documented in a logbook, he and a coworker had to replace some pumps in a pump "pit" on the C level floor, which were installed at some time before he was hired by Cushman.  The pit was covered by metal grates, with an access door in one corner.  Inside the access door was a wooden ladder to descend into the pit.  Replacing the pumps was not a complex job and was something he had done "a couple of dozen times" before, although he had not previously replaced the newly-installed pumps.

152143/2020   TISCIONE, PETER vs. FORD FOUNDATION
Motion No.  001

Page 2 of 9

Plaintiff and his coworker unbolted a section of the grates away from the area with the access door, creating an opening into the pit. They then descended down a fiberglass ladder they had lowered into the opening. After replacing the pumps, the men ascended the same fiberglass ladder and exited the pit. Plaintiff's accident occurred when the two men went to reattach the metal grate. Holding the grate with his fingers through its thin openings, plaintiff attempted to align one edge of the grate with the floor after his coworker had aligned the opposite edge. The opposite edge became misaligned, causing the grate to fall into the pit. Since plaintiff's hand was inside the grate, he was pulled into the pit with it, falling several feet. With the help of his coworker, he exited the pit through the access door and the wooden ladder.

Plaintiff was never told to only enter the pit through the access door or to not remove the metal grates. A safety harness was available, but he was never directed to use it nor was there a place to tie off any harness.

### B. Deposition Testimony of The Ford Foundation (Doc No. 43)

A director of property management testified on behalf of The Ford Foundation that it owned the building at the premises, which consisted of fourteen floors — eleven above ground and three below ground labelled A, B, and C, respectively, with C being the lowest level. Cushman was the property manager responsible for daily maintenance and repairs, with multiple employees working daily at the subject building. Cushman was the sole entity responsible for managing the work its employees performed, which included plaintiff's work maintaining the mechanical systems at the subject building.

A construction project renovating the subject building began in 2016, with Henegan serving as the general contractor. All major construction was completed in 2018, before the date of plaintiff's accident, and no construction was taking place on the C level floor at the time of

**152143/2020   TISCIONE, PETER vs. FORD FOUNDATION**                                                    **Page 3 of 9**
**Motion No.  001**

3 of 9

plaintiff's accident. Plaintiff's work replacing pumps on the C level floor was not related to any of the remaining construction being completed at the subject building, and the pumps at issue had an inventory of spares stored at the subject building for routine maintenance and repairs.

Although the director did not witness plaintiff's accident, he was informed of it by a Cushman employee, and confirmed the accuracy of an incident report generated shortly after the accident occurred. He was unaware of any complaints or issues related to the grates on the C level floor.

## C. Deposition Testimony of Henegan (Doc No. 44)

One of Henegan's superintendents testified on its behalf and confirmed that it was the general contractor on the renovation project, with Thornton serving as the design/structural engineers and defendant Gensler Architecture Design and Planning, P.C. serving as the architect. The existing mechanical systems on the C level floor were removed and replaced as part of the renovation project, which included all mechanical, electrical, and plumbing systems. The pumps plaintiff replaced shortly before his accident and the metal grates above the pump pit were both installed as part of the renovation.

Cushman was not hired as a subcontractor by Henegan, and only interacted with Henegan staff to provide knowledge about the systems present at the subject building. Henegan did not supervise any work Cushman employees performed as part of their responsibilities.

## D. The Ford Foundation Logbooks and Cushman Purchase Orders (Doc No. 48)

A logbook entry dated June 6, 2019, provided that two defective pumps in the pump pit needed to be replaced, but only one spare pump was in the inventory kept at the subject building, so more replacements needed to be ordered. Another logbook entry dated June 18, 2019, provided that plaintiff and a coworker repaired a pump in the pit that day, and that plaintiff was injured after

**152143/2020  TISCIONE, PETER vs. FORD FOUNDATION**
**Motion No.  001**

**Page 4 of 9**

4 of 9

the pump was replaced. Two invoices dated June 12, 2019, and June 13, 2019, respectively. indicated that Cushman purchased a total of six pumps, which plaintiff corroborated at his deposition (Doc No. 42 at 15-16).

## II. Legal Analysis and Conclusions

Henegan contends that plaintiff's claims should be dismissed because he was not performing work covered by Labor Law, as he was merely performing routine maintenance. It also argues that dismissal is warranted because plaintiff was the sole proximate cause of his accident. The Ford Foundation asserts in opposition that Henegan created an unsafe condition by removing a ladder previously installed inside the pump pit. Thornton argues in opposition that Henegan's motion is premature and that there are questions of fact pertaining to Henegan's alleged negligence regarding the installation of a ladder inside the pit. Plaintiff maintains in opposition that Henegan has failed to make a prima facie showing that his work was routine maintenance because the pumps were not mere components. He also argues he was not the sole proximate cause of his accident.

"In order to be entitled to the statutory protection, a worker must establish that he or she sustained injuries while engaged in the erection, demolition, repairing, altering, painting, cleaning[,] or pointing of a building or structure" (*Rhodes-Evans v 111 Chelsea LLC*, 44 AD3d 430, 432 [1st Dept 2007] [internal quotation marks and citations omitted]). Although repairing is one of the activities enumerated in the statute, Labor Law does not cover workers "engaged in routine maintenance" (*Gaston v Trustees of Columbia Univ. in the City of N.Y.*, 190 AD3d 551, 552 [1st Dept 2021]; *see Smith v Shell Oil Co.*, 85 NY2d 1000, 1002 [1995]), which involves "replacing components that require replacement in the course of normal wear and tear" (*Esposito v New York City Indus. Dev. Agency*, 1 NY3d 526, 528 [2003]). In determining whether a worker

**152143/2020   TISCIONE, PETER vs. FORD FOUNDATION**
**Motion No.  001**

**Page 5 of 9**

[* 5]

was engaged in repairing as compared to routine maintenance, the work is viewed "not . . . at the moment of injury, but in the context of the entire project" (*Gaston*, 190 AD3d at 552; *see Prats v Port Auth of N.Y. & N.J.*, 100 NY2d 878, 881-882 [2003]).

Viewing plaintiff's work in the context of the entire renovation project, it constituted routine maintenance for four reasons. First, replacement of the pumps was unrelated to the work Henegan previously performed on the C level floor and was performing in other portions of the subject building on the date of plaintiff's accident (*see Cullen v Uptown Stor. Co.*, 268 AD2d 327, 327 [1st Dept 2000] [finding replacing ceiling tiles was routine maintenance because it was "not part of the renovation work that had previously been performed by various contractors and subcontractors or that was ongoing in other parts of the building"]).

Second, replacing the pumps was not part of some larger, more involved project; all plaintiff had to do was replace the individual pumps (*cf. Gaston*, 190 AD3d at 552 [finding issue of fact regarding whether activity covered by statute because work replacing boiler steam valve "was part of a larger project that included removing portions of the boilers via blowtorches and installation of new components by welding"]).

Third, the remedy for a malfunctioning pump was straightforward. To uninstall the broken pump, plaintiff simply had to unplug it from an electrical outlet and then uncouple it from some attached piping. To install the new pump, he merely had to reattach the piping and plug the new pump back into the outlet.[1] This type of straightforward fix is consistent with routine maintenance, not repairing activity covered under the statute (*see Abbatiello v Lancaster Studio Assoc.*, 3 NY3d

---

[1] At his deposition, plaintiff indicated that one of the pumps was hardwired into the electrical circuit. However, he gave no indication that replacing the hardwired pump was more difficult than the pump plugged into the electrical outlet, and it took the same amount of time to replace each style of pump.

**152143/2020   TISCIONE, PETER vs. FORD FOUNDATION**
**Motion No.  001**

**Page 6 of 9**

46, 53 [2004] [concluding work was routine maintenance because remedying problem only required loosening screws, draining water, and replacing damaged item]).

Fourth, and finally, an inventory of replacement pumps was kept in stock at the subject building (*see Picaro v New York Convention Ctr. Dev. Corp.*, 97 AD3d 511, 512 [1st Dept 2012] [finding work was routine maintenance, in part, because replacement parts kept "in stock on the premises"]). Thus, Henegan has made a prima facie showing that plaintiff was not performing work covered under Labor Law.

Plaintiff fails to demonstrate that a triable question of fact exists. Although the pumps were only recently installed as part of the renovation project and plaintiff testified that he had not previously replaced the newly-installed pumps, those facts do not affect the determination that the type of work performed by plaintiff was the replacement of components consistent with routine maintenance (*cf. Roth v Lenox Terrace Assoc.*, 146 AD3d 608, 608 [1st Dept 2017] [finding issues of fact existed where small component malfunctioned due to normal wear and tear but it was "not a part that would ordinarily require inspection, adjustment(,) or replacement, and that it generally lasts as long as (the larger component) and can last the life of the (machine)"]; *Santiago v Fred-Doug 117, L.L.C.*, 68 AD3d 555, 556 [1st Dept 2009] [finding issues of fact based on contradicting evidence about whether work done as part of normal maintenance call or larger multi-day repair project]).

Therefore, plaintiff's Labor Law § 240(1) claim must be dismissed (*see Cordero v SL Green Realty Corp.*, 38 AD3d 202, 202 [1st Dept 2007] [dismissing plaintiff's Labor Law § 240(1) claims after concluding he was injured while performing routine maintenance]). "Nor does plaintiff have a claim under Labor Law § 241(6), which only applies in construction, demolition[,] or excavation" (*id.* [dismissing Labor Law § 241(6) claim after concluding plaintiff involved in

**152143/2020  TISCIONE, PETER vs. FORD FOUNDATION**
**Motion No. 001**

**Page 7 of 9**

7 of 9

[* 7]

routine maintenance because such work not covered by statute]; *see Esposito*, 1 NY3d at 528 [similar]).

Lastly, regarding plaintiff's Labor Law § 200 claims, the statute only requires owners and general contractors "to provide *construction site* workers with a safe place to work" (*Comes v New York State Elec. & Gas. Corp.*, 82 NY2d 876, 877 [1993] [emphasis added]), by "maintain[ing] a safe *construction site*" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998] [emphasis added]). Here, as plaintiff was not a construction site worker entitled to Labor Law protection, his Labor Law § 200 claims must also be dismissed.

The parties remaining contentions are either without merit or need not be addressed given the findings above.

Accordingly, it is hereby:

ORDERED that the motion by defendant Henegan Construction, Co., Inc., for summary judgment dismissing the complaint as against it is granted and the complaint is dismissed in its entirety as against said defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further

ORDERED that the action is severed and continued against the remaining defendants; and it is further

ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further

ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further

**152143/2020 TISCIONE, PETER vs. FORD FOUNDATION**
**Motion No. 001**

**Page 8 of 9**

8 of 9

ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website)].

20240405175410DC0HEN6A8D320AEC2A48208149253285355F844

_____4/5/2024_____
**DATE**

_____
**DAVID B. COHEN, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**152143/2020  TISCIONE, PETER vs. FORD FOUNDATION**
**Motion No.  001**

Page 9 of 9

9 of 9

[* 9]